**Opinion issued January 22, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00767-CV

_____

### GARRETT OPERATORS, INC., Appellant

### V.

### CITY OF HOUSTON, Appellee

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-20088**

---

## O P I N I O N

Appellant, Garrett Operators, Inc. ["Garrett"], filed a declaratory judgment action against the City of Houston ["the City"] regarding the application and interpretation of the City's sign code as it pertains to a billboard Garrett owns and

operates.  On appeal, Garrett contends the trial court erred in granting the City's motion for summary judgment and denying its own motion.

## BACKGROUND

The underlying case was previously on appeal to this Court in connection with a plea to the jurisdiction filed by the City.  *See Garrett Operators, Inc. v. City of Houston*, 360 S.W.3d 36 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ("Garrett I").  The relevant facts set forth in that opinion provided as follows:

> Garrett Operators holds a lease on a small parcel of land located in Houston, Texas. The only significant structure on this parcel of land is an advertising billboard. George Thomas Cox is the sole owner of Garrett Operators.
>
> Cox met with Susan Luycx, division manager of the Houston Sign Administration, in January 2008 to discuss Cox's plans to install an LED display on his billboard. According to Cox's affidavit, Luycx informed Cox that it was "illegal in the City of Houston for sign owners to use an LED display on a sign." Cox told Luycx that the Sign Code did not mention LED lighting, to which Luycx responded that "we are likely to change the sign code."
>
> Subsequently, Garrett Operators' counsel sent a letter to Luycx describing the proposed installation and asserting that the Sign Code does not require a permit for the installation. Luycx responded, stating that "although your client has yet to formalize his intentions with this office, and based solely on the information currently available to us, your client's proposal contravenes and would be in direct violation of the City's Sign Code."
>
> On July 12, 2008, Garrett Operators attempted to install the LED display on his billboard. Before work began, however, Luycx appeared and issued a stop order on the work. The basis given for the stop order was "No permits on file. No permits on site. Permits are

required to change structure of sign. (L.E.D. boards were being added.)"

On December 5, 2008, Garrett Operators and Cox filed suit against the City of Houston in a Harris County civil court at law. They asserted claims for inverse condemnation, declaratory judgment, violation of section 1983 of title 42 of the United States Code, and violation of their state constitutional due course of law rights. On December 10, 2008, the City of Houston enacted an ordinance that amended the Houston Sign Code to explicitly prohibit "off-premise electronic signs," a category into which Garrett Operators' sign falls. Plaintiffs subsequently amended their petition, including in their declaratory judgment action a claim that the 2008 amendments to the Sign Code did not apply to them.

The City of Houston filed a plea to the jurisdiction arguing, among other things, the inverse condemnation claim was not ripe and that the other claims were outside the legislatively prescribed subject-matter jurisdiction of the court. The trial court granted the plea to the jurisdiction on each of Plaintiffs' claims, dismissing the suit.

*Id.* at 39–40.

Garrett appealed. On May 12, 2011, this Court determined that Garrett's inverse condemnation claim was not ripe because Garrett had not obtained a final decision from the Sign Administration as to whether, upon proper application for a permit, an LED display could be installed on its billboard. *Garrett I*, 360 S.W.3d at 43. Because Garrett's inverse condemnation claim was dismissed for want of jurisdiction, its remaining claims could not be "inherently intertwined" with the dismissed claim and were outside the jurisdictional limits of the county court. *Id.* at 44. We made "no determination in this holding on Garrett Operators' claim in its declaratory judgment action that it was not required to obtain a permit." *Id.* at

3

43 n.1. After this Court's opinion issued, Garrett, in June 2011, finally applied for a permit to change its tri-vision billboard system to an LED system, which it noted was subject to and without waiving its position that no permit was required.

After the Texas Supreme Court denied petition for review in the county court case, Garrett filed the present case in district court on April 4, 2012. It its petition, Garrett claimed that any application of the 2008 amendments to him was a violation of the Texas Constitution's prohibition against retroactive laws under Article I, section 16. Garrett also sought declarations that: (1) "the amendments to the Sign Ordinance that were enacted after his claims had accrued and were pending are invalid and unconstitutional as applied to Garrett[;]" (2) the pre-amendment Sign code (a) did not prohibit LED lighting and (b) did not require a permit from the Sign Administration to install LED lighting; and (3) section 245.002 of the Local Government Code also prohibited the City from applying the amendments to the sign code retroactively.

The City filed a motion for summary judgment contending, among other things, (1) that Garrett's constitutional claims were barred by limitations, (2) that the pre-2008 Sign code required a permit, for which Garrett did not apply until after filing suit, and that absent a request for a permit Garrett had no vested right to install its LED technology, and (3) Garrett had no vested right under the Local Government Code to prevent application of the 2008 amendments.

Garrett filed its own motion for summary judgment, seeking declarations (1) that the a 2008 amendments were unconstitutional as applied to it, (2) that the pre-amendment sign code permitted LED lights and their installation did not require a permit, and (3) that section 245.002 of the Local Government Code required the City to apply pre-amendment provisions to Garrett's request to modify its billboard.

The trial court, without giving reasons, granted the City's motion for summary judgment and denied Garrett's motion for summary judgment. This appeal followed.

## PROPRIETY OF SUMMARY JUDGMENT FOR CITY AND DENIAL OF GARRETT'S SUMMARY JUDGMENT

In its appeal, Garrett presents the following issues:

1. Did the trial court err in granting the City's Motion on the ground that Garrett's claim under article I, section 16 of the Constitution was barred by the statute of limitations?

2. Did the trial court err in denying Garrett's Motion on its request for a declaration that application of the amended code to the upgrade to LEDs violated article I, section 16 of the Constitution?

3. Did the trial court err in granting the City's Motion and denying Garrett's Motion regarding construction of the 2008 Sign code?

4. Did the trial court err in granting the City's Motion and denying Garrett's Motion on Garrett's claim that TEX. LOC. GOV'T CODE ANN. § 245.002 required the City to apply the 2008 Code to the upgrade?

5

## Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A movant is entitled to traditional summary judgment if (1) there are no genuine issues as to any material fact and (2) the moving party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). To obtain traditional summary judgment on an opposing party's claims, the movant must conclusively negate at least one element of each of the claims or conclusively establish each element of an affirmative defense. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). On appeal, when both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary-judgment evidence presented by both sides and determine all questions presented and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). If we determine that a fact issue precludes summary judgment for either party, we remand the cause for trial. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Big Train Carpet of El Campo*, Inc., 739 S.W.2d 792, 792 (Tex. 1987).

## Limitations

In its petition, Garrett sought a declaration "that the amendments to the Sign Ordinance that were enacted after [its] claims had accrued and were pending are

6

invalid and unconstitutional as applied to Garrett because such application violates article I, section 16 of the Texas Constitution[,]"[1] which prohibits the enactment of retroactive laws.

The City moved for summary judgment on this claim, arguing that it was barred by limitations. The City argued that Garrett's "as-applied" challenge to the constitutionality of applying the amended statues was subject to the three-year limitations period set forth in the Local Government Code regarding municipal ordinances,[2] and that Garrett's lawsuit, which was filed over three months after the three-year limitation period had expired, was untimely. The City also argued that the tolling provision found in section 16.064 of the Civil Practices and Remedies Code, which provides additional time for refiling a suit that is dismissed for lack of jurisdiction, was not applicable.

The tolling provision, section 16.064, provides:

> (a) The period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court

---

[1] "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16.

[2] (a) A governmental act or proceeding of a municipality is conclusively presumed, as of the date it occurred, to be valid and to have occurred in accordance with all applicable statues and ordinances if:
(1) the third anniversary of the effective date of the act or proceeding has expired, and
(2) a lawsuit to annul or invalidate the act or proceeding has not been filed on or before that third anniversary.
TEX. LOC. GOV'T CODE ANN. § 51.003(a) (Vernon 2008).

7

suspends the running of the applicable statute of limitations for the period if:

(1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and

(2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

(b) This section does not apply if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.064 (Vernon 2008).

On appeal, the City contends that the tolling provision does not apply for three reasons: (1) because Garrett did not file suit within 60 days of the final disposition of the county court suit; (2) because Garrett's request for declaratory judgment regarding its constitutional claim was not a second filing "of the same action in a different court;" and (3) because Garrett "intentionally disregarded" the proper jurisdiction of the county court.

*Refiling within 60 days of dismissal*

Regarding the first issue, the City did not argue in its motion for summary judgment that the tolling statute was inapplicable because of Garrett's failing to file suit within 60 days of the final disposition of the county court suit. We cannot affirm a summary judgment on any ground not raised in the motion. *See Stiles v.*

8

*Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) ("[A] summary judgment cannot be affirmed on grounds not expressly set out in the motion or response.").

*Same Action*

The City also argued, both in its summary judgment and on appeal, that the tolling statute was inapplicable because the present suit was not the "same action" as the suit filed in county court because it added the constitutional claims, which were not in the county court lawsuit.

This Court, however, has considered and rejected this argument. In *Winston v. Am. Med. Int'l, Inc.*, 930 S.W.2d 945, 955 (Tex. App.—Houston [1st Dist.] 1996, writ denied), the defendant argued that "the only causes of action that [could] be saved [by the statute] are the ones asserted in [the previous suit]," and that "the 'same action' language of 16.064(a) limits what plaintiffs can file in [the second suit] to exactly what was filed in [the previous suit]." *Id.* This Court held that section 16.064 should be construed with section 16.068, which permits amended or supplemental pleading to relate back to the date of the original filing, "so as to achieve the clear purpose of the statutes, which is to toll limitations for a certain period when a case is dismissed for lack of jurisdiction and to allow adding to a petition additional theories of liability or defenses after the lawsuit has been filed if those new theories or defenses are not wholly based on a new, distinct, or different transaction or occurrence." *Id.* Here, Garrett's new constitutional claims

9

are not based on a new, distinct, or different transaction or occurrence" because all of the claims arise out of its efforts to modify the billboard and the City's efforts to keep it from doing so.

The City argues that "[n]o other case has followed *Winston* on this point." We note, however, *Winston* has not been overruled by this Court, or distinguished by another Court on these grounds, and we decline to do so now.

*Intentional Disregard of County Court Jurisdiction*

The City also argued at trial and on appeal that section 16.064 did not apply because Garrett "intentionally disregarded the proper jurisdiction of the county court." Specifically, the City argues that, "Garrett sought damages for those claims of $5 million and $69 million, respectively, 'well outside the county court's [$100,000] jurisdictional limits.'"

When, as here, an adverse party has moved for relief under the "intentional disregard" provision, the nonmovant must show that it did not intentionally disregard proper jurisdiction when filing the case. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 313 (Tex. 2010). Because the non-movant has this information, he bears the burden of producing it. *Id.* The plaintiff must present some evidence on the issue, similar to that imposed on a non-movant who receives a no-evidence summary judgment. *See Brown v. Shores*, 77 S.W.3d 884, 889 (Tex. 2002) (Brister, J., concurring) (holding that when defendant moves for summary

10

judgment based on lack of plaintiff's diligence in obtaining service of process, plaintiff must present some evidence to explain delay, thereby shifting burden back to the defendant to defeat as matter of law). If the plaintiff presents some evidence, the burden shifts back to defendant to show why that explanation is insufficient as a matter of law. *Id.*

The City's motion for summary judgment argued that limitations applied, and the tolling statute did not, because Garrett intentionally disregarded the proper jurisdiction of the county court by including claims that exceeded the jurisdictional amount in controversy allowed by that court. Thus, we examine the summary judgment record to determine whether Garrett presented some evidence on the issue of intentional disregard.

In its response to the City's motion for summary judgment, Garrett showed that its constitutional claim, with its damages in excess of the jurisdictional maximum, was included in the county court case because it was "inherently intertwined" with its inverse condemnation claim, a claim over which the Harris County Civil Court at Law has exclusive jurisdiction. *See Occidental Chem. Corp., v. ETC NGL Transport, LLC.*, 425 S.W.3d 354, 360 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) (stating legislature intended to confer exclusive jurisdiction over statutory and inverse condemnation proceedings involving damages for taking of property); TEX. GOV'T CODE ANN. § 25.1032(c) (Vernon

11

Supp. 2014). Garrett, relying on *Taub v. Aquila Sw. Pipeline Corp.*, 93 S.W.3d 451 (Tex. App.—Houston [14th Dist.] 2002, no pet.), added his declaratory judgment claims to his inverse condemnation claims in county court. In *Taub*, the court stated:

> In summary, the history of [the government code section granting jurisdiction to county courts in Harris County] indicates an intent to direct more cases to the Harris County Civil Courts at Law, thereby alleviating the backlog in the district courts. Consistent with this intent, ***we conclude the Harris County Civil Courts at Law have jurisdiction, but not exclusive jurisdiction, over a landowner's claims, regardless of the amount in controversy, when those claims are inherently intertwined in an eminent domain proceeding.*** Thus, requiring all eminent domain proceedings to be heard in the Harris County Civil Courts at Law need not result in separate litigation of the condemnor's and the property owner's claims.
>
> * * * *
>
> We hold a county civil court at law in Harris County has exclusive jurisdiction over Aquila's eminent domain proceedings. We further hold a county civil court at law has jurisdiction to hear trespass-related claims such as those raised by Taub in the present case, regardless of the amount in controversy, but its jurisdiction does not preclude the district court from hearing such claims.

93 S.W.3d at 458, 464.

Having shown in its response a reason for Garrett's inclusion of the claims appended to its inverse condemnation claim, the burden is thus on the City to negate that reason as a matter of law. The City, citing *In re United Services*, argues that "while the tolling statute protects plaintiffs who mistakenly file suit in a forum that lacks jurisdiction, it does not apply to a strategic decision to seek relief

12

from such a court—which is what happened here." *See In re United Servs.*, 307 S.W.3d at 313.

In the case of *In re United Services*, the plaintiff, Brite, sued his employer for discrimination in the county court at law. *Id.* at 304. Brite asserted in his petition that his damages exceeded the court's statutory minimum, but he did not plead that his damages were below the statutory maximum. *Id.* at 305. His employer filed a plea to the jurisdiction, contending that his damage claims exceeded the court's statutory maximum. *Id.* Brite amended his petition to seek $1.6 million in damages, and then was awarded damages in excess of $650,000. *Id.* The supreme court reversed the county court's judgment because the amount in controversy at the time Brite filed suit was above the statutory maximum of the county court. *Id.* Brite then refiled his suit in district court, relying on the tolling statute in section 16.064. *Id.* Noting that Brite's county court petition did not allege that the damages sought were within the jurisdiction limits of the court, and that Brite had never contended that he was unaware of or confused about the county court's jurisdictional limits, the supreme court concluded that Brite's county court petition was filed with "intentional disregard" for the county court's jurisdiction. *Id.* at 312.

The present case, while quite similar to *In re United Services*, has one important distinguishing feature—a claim for inverse condemnation, which had to

13

be filed in the county court at law. The City contends, nonetheless, that Garrett cannot rely on *Taub* for appending its declaratory claims to its condemnation claim because *Taub* is dicta. Regardless of whether *Taub* is dicta, it is certainly some authority from the appellate court in which the county court lies supporting Garrett's belief that its declaratory claims could be brought in county court along with its inverse condemnation claim.

The City also argues that "Garrett argues only that its request for declaratory relief was 'inherently intertwined' with its 'takings' claim, the same unsuccessful argument it raised in *Garrett I*." The City, however, misinterprets this Court's holding in *Garrett I*. This Court did not hold that claims exceeding the jurisdictional limit of the county court could not be appended to a related inverse condemnation claim. Instead, we held only that Garrett's inverse condemnation claim was not ripe at that time. 360 S.W.3d at 43. We went on to hold that "because the trial court properly dismissed Garrett Operators' inverse condemnation claim for lack of subject-matter jurisdiction, the county court at law's jurisdiction could not be invoked over the remaining claims by being 'inherently intertwined' with the inverse condemnation claim." *Id.* at 44. However, until the county court dismissed the inverse condemnation claim, which this Court then affirmed, Garrett had no way to know that there was nothing left for its declaratory claims to be intertwined with. This case does not present the

same blatant disregard for the district court's jurisdictional limits as was presented in *In re United Services.* A reliance on case law, even if dicta, is not the kind of "tactical decision" that will preclude application of the tolling statute.

### Conclusion Regarding Limitations

Because the City did not prove each element of its limitations affirmative defense, the trial court could not have granted summary judgment in its favor on Garrett's request for a declaration that applying the amended statutes violated Article I, section 16 of the Texas Constitution on limitations grounds.

## Construction of 2008 Sign Code

In its petition, Garrett requested a declaration that application of the amended code to the upgrade to LEDs violated the prohibition against retroactive laws found in Article I, section 16 of the Texas Constitution. Garrett also requested the trial court to declare that "prior to December 30, 2008, the Code did not prohibit LED lighting on its Sign," and that before the amendments to the sign code, "a sign permit was not required to upgrade an electronic sign to one with LED display."

The City contended in its motion for summary judgment, and in its response to Garrett's motion for summary judgment, that because Garrett had not applied to the Sign Administration for a permit to convert its sign to LED before the December 2008 amendments, it had "no vested property right to sustain its as

15

applied challenge to the December 10, 2008 sign code amendment." Garrett responded that no such permit was required under the pre-amendment sign code, and that by obtaining an electrical permit, it had complied with all applicable provisions of the sign code.

Garrett contends that the trial court erred in denying its requested declaration regarding prohibited retroactive laws. Garrett also argues that the trial court erred in granting the City's motion and denying his motion regarding construction of the 2008, pre-amendment sign code. Both issues require this Court to determine whether the pre-amendment code required Garrett to obtain a permit from the Sign Administration before altering its billboard to accommodate LED lights.

*Law Regarding Retroactivity*

A retroactive law is one that extends to matters that occurred in the past. *Tenet Hosps., Ltd. v. Rivera*, 445 S.W.3d 698, 707 (Tex. 2014); *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 138 (Tex. 2010) ("A retrospective law literally means a law which looks backwards, or on things that are past; or if it be taken to be the same as retroactive, it means to act on things that are past." (quoting *DeCordova v. City of Galveston*, 4 Tex. 470, 475–76 (1849)); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 270, 114 S. Ct. 1483, 1499

(1994) (determining for purposes of retroactivity "whether the new provision attaches new legal consequences to events completed before its enactment.").

But not all retroactive statutes are unconstitutional. *Robinson,* 335 S.W.3d at 138. *Robinson* established a three-part test for examining whether retroactive laws are constitutional: "the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; the nature of the prior right impaired by the statute; and the extent of the impairment." *Id.* at 145.

*Analysis*

The City argued, both in the motions and on appeal, that applying the amendments to Garrett does not create an unconstitutionally retroactive law because Garrett does not have any vested right to convert his billboard to LED without a permit. *See id*. (requiring court to examine "prior right impaired by the statute" to determine whether retroactive law is constitutional). Specifically, it is the City's position that, absent an application to the Sign Administration, which Garrett admittedly did not submit until 2011, Garrett had no "vested interest." Garrett responds, however, that no such application was required. Thus, we turn to the language of the relevant sign code provisions to determine whether a permit was required.

When issues involve the interpretation of a statute itself, we apply a de novo standard of review. *MCI Sales & Serv., Inc. v. Hinton*, 329 S.W.3d 475, 500

17

(Tex. 2010) (stating that issue of statutory construction is legal question that we review de novo); *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989) (holding statutory construction is a question of law).

In construing a statute, our main objective is to ascertain and give effect to the intent of the Legislature. When interpreting a statute, we "consider the entire act, its nature and object, and the consequences that would follow from each construction." *Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex. 1991); *see also* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2013). We must "reject interpretations of a statute that defeat the purpose of the legislation so long as another reasonable interpretation exists." *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996). When a statute is clear and unambiguous, we need not resort to rules of construction or extrinsic evidence to construe it. *Cail v. Serv. Motors, Inc.*, 660 S.W.2d 814, 815 (Tex. 1983). Instead, we may determine the intent of the Legislature from the plain and ordinary meaning of the words used within the statute. *See id.*

The City relies on section 4605(a) of the 2008 sign code, located in the "Sign Permits and Fees" portion of the code, which provides:

> (a) **Permit Required**. *No person shall* erect, *reconstruct, alter*, relocate or use *a sign* within the sign code application area *without first having secured a written permit from the Sign Administration*

to do so, subject to the exceptions set forth in Section 4605(b).[3] It is an affirmative defense to prosecution under this subsection if a sign is excepted from having a permit under Section 4605(b).

Houston, Tex., Building Code Ch. 46, § 4605(a) (emphasis added).[4]

The City contends that Garrett's plan was to "reconstruct" or "alter" its billboard, thus, pursuant to §4506(a), Garrett was required to obtain a "written permit from the Sign Administration to do so." *See* Houston, Tex., Building Code Ch. 46, § 4605(a).

Garrett, in contrast, relies on section 4608(j) of the 2008 sign code, located in the "Miscellaneous Sign Provisions" portion of the code, which provides:

> **(j) Change of Ornamental Features, Electrical Wiring or Advertising Display.** *No sign permit is required* for the *change* of any of the ornamental features, *electrical wiring or devices*, or the advertising display of a sign previously permitted. This provision shall not apply to spectacular signs with respect to advertising display, nor shall it release a person from complying with all other applicable permitting requirements of the City; including those of the Construction Code.

Houston, Tex., Building Code Ch. 46, § 4608(j) (since amended) (emphasis added). Garrett argues that no sign permit was required for it to change the

---

[3]  Section 4605(b) enumerates several exceptions for on-premises signs, none of which are applicable here because Garrett's sign is an off-premises sign. Houston, Tex., Building Code Ch. 46, § 4605(b) (since amended).

[4]  Accessed through the City of Houston's website at, http://edocs.publicworks.houstontx.gov/documents/divisions/planning/enforcement/signcode20110902.pdf.

19

"electrical wiring or devices" of its sign. Thus, we must decide whether Garrett's plans for the sign were to reconstruct or alter it, or were merely changes to its electrical wiring and devices.

According to Garrett's summary judgment evidence "the Sign is a steel-constructed, 61-foot-high, 34-feet-wide, dual-faced, electronic (and metal halide light for nighttime view) tri-vision sign with moving parts and mechanisms" that "contain[ed] 204 moving slats to display six different messages in sequence." According to its motion, "Garrett made the decision to upgrade the advertising display to LEDs, the state-of-the-art lighting." Garrett's subcontractor, Laser Electric, applied for and obtained a commercial permit to perform the electrical work required for the conversion to LED, but Garrett did not apply for a permit from the Sign Administration, contending it did not have to do so.

After the electrical wiring changes were done in May 2008, the City stopped Garrett from completing its conversion because it had not obtained a permit from the Sign Administration to do so.

Garrett's summary judgment evidence describes the planned upgrade to complete the conversion to LEDs as follows:

> The sign already moved and changed messages. It contains 204 moving slats to display six different messages in sequence. Thus, an upgrade to LED technology merely simplifies the change process, allowing messages to be changed remotely by computer, instead of by physically altering the slats. The upgrade does not involve removing or replacing the sign cabinet, removing or replacing the poles,

20

changing the size of the sign, altering its height, or modifying any structural components of the sign whatsoever. The upgrade results in no change in the shape or location and creates no new encroachment.

The City's evidence, however, included a document by the Division Manager of the Sign Administration, in which she described the proposed upgrade as follows:

What your client is proposing is to totally remove the three existing faces of the sign, not for maintenance operations or for changing the letters, symbols, or other matters (i.e., not to merely change the advertising copy), but rather to reconstruct the existing sign by installing a new LED sign cabinet to create essentially a new sign. Your continued reference to your client's expenditure of $250,000 to implement these changes on its face belies your argument that such extensive reconstruction falls under Section 4608(j). Therefore, although your client has yet to formalize his intentions with this office, and based solely on the information currently available to us, your client's proposal contravenes and would be in direct violation of the City's Sign Code.

While both sides disagree about whether the proposed changes require a permit from the Sign Administration, the parties essentially agree on the details of the proposed upgrade. The upgrade, as described, would require the rewiring of the electrical portions of the sign, but also would require the removal of the rotating slats, which would then be replaced by LED panels that could be controlled and changed by computer.

We agree with the City that this type of extensive change to the sign is more than simply changing the "electrical wiring and devices" of the sign. Indeed, the summary judgment evidence shows that the electrical wiring component of the project had been completed when the City issued a stop order, and that that more

21

work was necessary to complete the project, i.e., the removal of the rotating slats and the installation of the LED boards. The removal of the rotating slats and replacement of them with a completely different technology would result in a sign with a remarkably different looking and functioning display.

If we were to accept Garrett's position that it was merely changing the "electrical wiring and devices" of the sign, the exception in section 4612(b) would threaten to "swallow the rule" requiring permits for reconstructing and altering signs found is section 4506(a), for it is hard to imagine any extensive renovation to a sign that would not also involve changes to the electrical wiring.

If we were to interpret the exception in section 4612(b) as broadly as Garrett encourages us to, the permit requirement in section 4506(a) would become largely meaningless. Statutory language should not be read as pointless if it is reasonably susceptible of another construction. *Franka v. Velasquez*, 332 S.W.3d 367, 393 (Tex. 2011).

*Conclusion Regarding Construction of Sign Code*

Therefore, we conclude that the proposed conversion from a tri-display billboard to a LED-display billboard was not merely a change to the "electrical wiring and devices," but was a reconstruction or alteration of the billboard requiring a permit from the Sign Administration. Because Garrett was required to, but had not requested a permit from the Sign Administration at the time it filed

suit, it had no vested interest in converting its sign to LED without a permit. Because Garrett had no vested interest in converting its sign without a permit, the amendments to the Sign Code are not unconstitutionally retroactive when applied to it. Thus, the trial court properly granted summary judgment on Garrett's claims based on the unconstitutional retroactive application of a change in the law.

**Section 245 of Texas Local Government Code**

In its motion for summary judgment, Garrett also sought a declaration that "Section 245.002 of the Local Government Code requires the City to apply the provisions of the sign code as it existed prior to December 10, 2008, to Garrett's upgrade to LED lighting[.]"

*Applicable Law*

Chapter 245 of the code is entitled "Issuance of Local Permits," and it has been called the "Vested Rights Act." *See Md. Manor Assocs. v. City of Houston*, 816 F.Supp.2d 394, 409 (S.D. Tex. 2011). "Chapter 245 of the [Texas Local Government] Code recognizes a developer's vested rights and requires a regulatory agency to consider approval or disapproval of an application for a permit, such as a subdivision plat, based on regulations and ordinances in effect at the time the original application is filed." *Milestone Potranco Dev., Ltd. v. City of San Antonio*, 298 S.W.3d 242, 248 (Tex. App.—San Antonio 2009, pet. denied). "The effect of vested rights under Chapter 245 of the Local Government Code is to 'freeze' the

23

land use regulations as they existed at the time the first permit application was filed through completion of the 'project;' in other words, a project with vested rights is not subject to intervening regulations or changes after the vesting date." *City of San Antonio*, 383 S.W.3d at 245.

Section 245.002(a) of the Local Government Code provides:

(a) Each regulatory agency shall consider the approval, disapproval, or conditional approval of an application for a permit solely on the basis of any order, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time:

> (1) *the original application for the permit is filed* for review for any purpose, including review for administrative completeness; or
> (2) a plan for development of real property or plat application is filed with a regulatory agency.

(a-1) *Rights* to which a permit applicant is entitled under this chapter *accrue on the filing of an original application or plan for development* or plat application that gives the regulatory agency fair notice of the project and the nature of the permit sought. An application or plan is considered filed on the date the applicant delivers the application or plan to the regulatory agency or deposits the application of plan with the United States Postal Services by certified mail addressed to the regulatory agency. A certified mail receipt obtained by the applicant at the time of deposit is prima facia evidence of the date the application or plan was deposited with the United States Postal Service.

TEX. LOC. GOV'T CODE ANN. § 245.002(a), (a-1) (Vernon 2005) (emphasis added).

*Analysis*

The City contends that section 245.002(a) is not applicable because Garrett did not file its original application for a permit until 2011, well after the sign code was amended. Garrett responds that "[t]he required electrical permit for the upgrade project was requested (and granted) while the 2008 Code was in effect." We have already held that, even under the pre-amendment sign code, Garrett was required to obtain a permit *from the Sign Code Administration* before upgrading its sign to LED technology, and that Garrett did not do that until 2011. The denial of the permit complained of by Garrett is the denial of a permit by the Sign Code Administration, thus its application for an electrical permit from a different City department has no effect in "freezing" the Sign Code Administration's application of the amended ordinances.

*Conclusion Regarding Section 245 of Local Government Code*

Under section 245.002(a), Garrett's rights were not vested until he filed his application for a permit with the Sign Code Administration in 2011. Thus, the trial court properly denied Garrett's motion and granted the City's motion on this ground.

25

**CONCLUSION**

We affirm the trial court's judgment.



Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.