# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00414-CV

**Appellant, HB Aviation, LLC // Cross-Appellants, Glenn Hegar, Texas Comptroller of Public Accounts; and Ken Paxton, Texas Attorney General**

**v.**

**Appellees, Glenn Hegar, Texas Comptroller of Public Accounts; and Ken Paxton, Texas Attorney General // Cross-Appellee, HB Aviation, LLC[1]**

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-006017, THE HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

HB Aviation, LLC, appeals the district court's final order denying HB Aviation's claim for refund of use tax paid under protest and assessing a fraud penalty after ruling on cross-motions for summary judgment and cross-motions to dismiss. *See* Tex. Tax Code §§ 112.051-.052. HB Aviation contends that the district court erred by: (1) granting summary judgment in favor of the Texas Comptroller of Public Accounts and the Texas Attorney General (collectively, the Comptroller) on their counterclaim for fraud and (2) denying HB Aviation's summary-

---

[1] The Comptroller and the Attorney General cross-appealed the district court's denial in part of their plea to the jurisdiction as to HB Aviation's claims under the Administrative Procedure Act (APA). Because HB Aviation abandoned its APA claims on appeal, the Comptroller and the Attorney General have now abandoned their challenge to the ruling on those claims.

judgment motion contending that its purchase of an aircraft qualified for an occasional-sale exemption. *See id.* §§ 111.061(b)(2), 151.304(a). We will affirm the district court's final order.

## BACKGROUND

HB Aviation, LLC, owned by Henry Broesche, purchased a Cessna Citation Excel aircraft in 2009 from James Creech and brought it into Texas, subjecting that purchase to Texas use tax. *See id.* § 151.101(a) ("A tax is imposed on the storage, use, or other consumption in this state of a taxable item purchased from a retailer for storage, use, or other consumption in this state."). Creech formed a corporation, Jim Creech Aircraft Services, Inc., in Arkansas in 1987. Creech is the only employee of Jim Creech Aircraft Services. The corporation obtained a sales-tax permit, but Creech did not have one in his own name. Through his corporation, Creech bought and sold airplanes to supplement the income he earned as a full-time pilot.

Initially, Jim Creech Aircraft Services operated by securing a line of credit, buying an airplane, taking title to it, advertising it, and then selling it. Creech testified in his deposition that "back then there was no reason to do a—what's called a 'back-to-back' [transaction] because [he] always owned the airplane," but later the business changed and "it got easier to just do a back to back." A "back-to-back transaction," Creech explained, is one in which "the title goes from the person I'm buying it from to myself, and then another—another Bill of Sale from me to whoever I'm selling it to. So on paper I've got title to the airplane, but I—I never really owned it." Immediately after that testimony, Creech was asked, "Is that kind of how the transaction was done in this case?" And Creech replied, "Uh-huh. Yes, sir." Creech stated that buying an airplane with a line of credit is distinct from a "back-to-back transaction"

2

because "in a back-to-back transaction you really—you don't—you don't put any money in the deal. You know, you don't actually own the airplane. It's just a paperwork deal."

Creech's corporation also acted as an "aircraft broker." Creech testified that those transactions, like brokering in a real estate transaction, involved Jim Creech Aircraft Services receiving a fee to assist an owner with advertising and selling an airplane but never owning the airplane itself. In those transactions, Jim Creech Aircraft Services "matched up" buyers and sellers by advertising in trade publications and providing his phone number for buyers to contact him but nothing more. Creech also noted that in a brokered transaction, the broker does not participate in the inspection of the aircraft. Creech did not know whether Jim Creech Aircraft Services sold any aircrafts in 2008, 2009, or 2010, and he did not know the last time that Jim Creech Aircraft Services sold any aircrafts.

Creech testified that the airplane transaction in this case went "relatively quick[ly]," beginning sometime before May 6, 2009, during one of his frequent conversations with his longtime friend Earl Amos of Houston. Amos told Creech that he had a client in Houston—alluding to Henry Broesche—who "was going to buy an airplane . . . [then] one thing led to another; and that's how it all happened." After his conversation with Amos, Creech started trying to find a Citation Excel aircraft by "contacting [his] contacts," those "people in the industry" that he "talk[s] to all the time."

One of Creech's contacts was Chuck Mulley, the owner of Business Aircraft Leasing, Inc. in Nashville, who "mentioned that they had an Excel." Business Aircraft Leasing, acting as a broker, purchased the aircraft involved in this case from HCA Squared, LLC on March 13, 2009. On May 12, 2009, Broesche formed HB Aviation to purchase the aircraft. Eight days later, on May 20, Creech purchased the aircraft from Business Aircraft Leasing. That

3

same day, HB Aviation purchased the aircraft from Creech. Creech testified that all three of the aircraft-purchase transactions were "back-to-back transactions." But when asked if the aircraft was a "brokered airplane or something else," Creech stated, "It was something else." Creech testified that he chose to do this transaction through himself, instead of Jim Creech Aircraft Services, "just to kind of expedite things."

**May 6, 2009 Aircraft Purchase & Sales Agreement**

On May 6, 2009, Creech individually, and Broesche, on behalf of HB Aviation, signed an "Aircraft Purchase & Sales Agreement" for the aircraft owned by Business Aircraft Leasing. George Andrew Coats of Coats & Evans, P.C., counsel for HB Aviation, testified that his firm drafted the Agreement, which was not a form agreement but instead was prepared specifically for the terms of the transaction.[2] The Agreement stated the purchase price of $4,800,000 and required that the aircraft undergo a "pre-purchase inspection."

The same day, Creech signed an Addendum to the Agreement providing that the aircraft would be relocated to Wichita, Kansas, on May 8, 2009, for the pre-purchase inspection. Creech acknowledged that there are "lots of people in Wichita who can check out Cessna planes." Creech testified that having an aircraft "checked over" is part of any aircraft-sales agreement but denied performing any of those "check overs" stating, "I don't do that." He recalled that Amos scheduled the pre-purchase inspection that took place in Wichita between May 6 and May 20, 2009. An email to Creech from a customer-service representative at the

---

[2] Coats provided deposition testimony based on his personal involvement with the aircraft transaction and because Henry Broesche, the 81-year old principal of HB Aviation, has Alzheimer's-related dementia. Broesche's treating physician provided a letter confirming that diagnosis and stating that Broeche "does not have either the basic cognitive skills or functional memory to undergo a legal deposition." Coats testified, "I have a recollection that Mr. Broesche no longer does."

4

Wichita Citation Service Center shows the "corrective action" taken on the aircraft. Hours before the aircraft was purchased on May 20, 2009, Creech forwarded that email to Coats along with another email noting an issue "discovered on the acceptance flight" that was repaired. Creech stated that he "think[s]" he looked at the aircraft on location at the Nashville International Airport but that he never rode in it or flew it. He expressly denied doing anything with the aircraft other than these transactions.

Specific provisions concerning the title and a tax exemption were included in the Agreement. As to title, section 1 of the Agreement stated that "Seller [Creech] warrants that Seller holds legal title to the Aircraft," and section 8 further stated that "Seller represents and warrants that it has good and marketable title to the Aircraft." However, Creech testified that he purchased the aircraft May 20, 2009, and not on May 6, 2009, when he signed the Agreement representing that he had title to the aircraft. Coats also testified that Creech obtained title to the aircraft on May 20. As to the tax exemption, section 12 of the Agreement stated that "Seller [Creech] believes that the sale of the Aircraft by Seller to Buyer [HB Aviation] qualifies as an occasional sale for Texas Sales and Use Tax purposes" and that "[a]t or prior to closing, Seller [Creech] will execute and deliver to Buyer [HB Aviation] a Texas Comptroller Occasional Sale form." Section 12 also stated that as the Seller, Creech represented and warranted that the following statements were true and correct:

(a) The Seller has not made any sale of a taxable item at retail within the last twelve (12) month period;

(b) The Seller has never held itself out as engaging in, nor has engaged, in the business of selling taxable items at retail;

(c) The Seller does not and has not ever held a Texas Sales Tax permit or similar permit in any other state; and

5

(d) The Aircraft is not offered for sale or sold in the Seller's usual course of business.

Coats testified that part of his law firm's "due diligence role is to consider the potential tax implications of the transaction; whether or not there are exemptions that apply, given the facts of any transaction," and that "[b]ased on the facts that we were presented by Mr. Creech, it was our understanding that this transaction met the requirements stated in the Texas Tax Code for an occasional sale." The completed Statement of Occasional Sale form presented to the Comptroller shows a fax transmission date of May 14, 2009, at 1:53 p.m. from "JCAS," which Creech testified is "James Creech Aviation Services." The Statement of Occasional Sale form bears Creech's signature below his certification that: "I do not hold a sales tax permit in Texas or any other state and I have not made a sale of more than one other taxable item within the previous twelve months."

Creech testified, and averred in a 2017 affidavit, that all the information in the 2009 Statement of Occasional Sale form was true and correct when he signed it. But Creech also testified that he did not recall completing or signing that form, who gave it to him, or how he obtained a copy to sign. Creech further denied awareness of an "occasional sales tax issue" and denied responsibility for inclusion of the occasional-sale language in the Agreement. When asked whether he knew "anything about these kind of documents at the time of this transaction," Creech stated, "No sir."

Creech testified that Broesche, on behalf of HB Aviation, bought the aircraft by wiring the purchase price to an Oklahoma City escrow company. Because that escrow company had copies of Creech's agreements with Business Aircraft Leasing and with HB Aircraft, Creech said that the company would "know what [he was] buying the airplane for" and "what [he was]

6

selling the airplane for." The escrow company wired "whatever the deal was" to Business Aircraft Leasing. And "the difference between what Mr. Broesche sent and what [Creech] had it bought for from Business Aircraft Leasing stayed at the escrow company." The difference between those two amounts—the money remaining in escrow "after the deal is closed"—was wired to Creech. Creech estimated that the fee for brokering a deal on a $4.8 million aircraft would be "a percent or a percent and a half" or about $50,000 or $75,000. He could not recall what he was paid for this transaction with HB Aviation, except that it was "[s]omething greater than $10,000." He testified that his fee "would have been income," not an investment or a capital gain, and that he paid federal income tax on his fee.

Aircraft bills of sale showed that Creech's purchase of the aircraft from Business Aircraft Leasing was filed with the Federal Aviation Administration on May 20, 2009, at 3:19 p.m. and that HB Aviation's purchase of the same aircraft from Creech was filed one minute later at 3:20 p.m. Registration of interests involving the aircraft were reflected on a May 20, 2009 "Priority Search Certificate" issued by the "International Registry for International Interests in Mobile Equipment (Aircraft Equipment)." The recorded interests included: (1) a Contract of Sale filed March 13, 2009, listing HCA Squared as the Seller and Business Aircraft Leasing as the Buyer; (2) a Contract of Sale filed May 20, 2009, listing Business Aircraft Leasing as the Seller and James Creech as the Buyer; and (3) a second Contract of Sale also filed May 20, 2009, listing James Creech as the Seller and HB Aviation as the Buyer. HB Aviation did not pay use tax on its aircraft purchase.

7

**Administrative Proceedings Before Comptroller**

The Comptroller audited HB Aviation for sales and use tax compliance on its purchase of the Aircraft. HB Aviation claimed the occasional-sale exemption. *See* Tex. Tax Code § 151.304(a). During the audit, HB Aviation presented the Comptroller with a copy of its May 6 Agreement and Creech's signed Statement of Occasional Sale in support of the claimed exemption.

In 2012, the Comptroller assessed sales and use tax of 8.25% ($396,000) on the aircraft purchase, plus a 10% penalty and interest. HB Aviation requested an administrative-redetermination hearing. During that hearing process, HB Aviation again presented the Comptroller with a copy of the Agreement and Statement of Occasional Sale. HB Aviation contended that Creech sold the aircraft in his individual capacity, that neither Creech individually nor HB Aviation had a sales-tax permit, and that neither of them had made any taxable sales in the twelve months preceding the sale of the aircraft. The Comptroller affirmed the assessment against HB Aviation.

**HB Aviation's District-Court Suit**

Afterward, HB Aviation paid under protest the assessed taxes, penalties, and interest for the aircraft and filed the underlying suit in Travis County district court, seeking return of its protest payment. HB Aviation sued for declaratory relief under the Administrative Procedure Act (APA), *see* Tex. Gov't Code § 2001.038, and the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011. The Comptroller filed a counterclaim for fraud seeking a penalty of 50% of the taxes assessed—here $198,000—plus interest. *See* Tex. Tax Code § 111.061(b)(2).

8

The parties subsequently filed cross-motions to dismiss and cross-motions for summary judgment, resulting in the orders resulting in the orders that the parties appealed.[3] The district court granted the Comptroller's motion for summary judgment and denied HB Aviation's motion for summary judgment, concluding that HB Aviation was not entitled to a tax refund and that it was liable for a $198,000 fraud penalty. Then the Comptroller filed a motion for summary judgment on HB Aviation's remaining claim under the APA. The district court granted the Comptroller's motion for summary judgment and entered a final order disposing of all parties and claims. HB Aviation filed a motion for reconsideration of the ruling on its motion for summary judgment, which the district court denied. These appeals followed.

**Standard of Review**

We review summary judgments de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference and resolving any doubts in favor of the nonmovant. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The movant seeking traditional summary judgment must demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). If the movant satisfies this initial burden, the burden shifts to the nonmovant to produce evidence raising an issue of fact. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 517

---

[3] HB Aviation's motion to dismiss contended that the Comptroller's fraud counterclaim had no basis in law or fact. *See* Tex. R. Civ. P. 91a. The Comptroller's motion sought dismissal for lack of jurisdiction as to HB Aviation's claims under the APA and UDJA that the Comptroller's prior contested-case decisions as improperly adopted administrative rules. The district court denied HB Aviation's motion to dismiss and granted in part and denied in part the Comptroller's motion to dismiss, concluding that it had jurisdiction under the APA to decide "whether the Comptroller Decisions relied upon in its Final Decision are improperly adopted administrative rules, and the validity of such rules."

9

(Tex. 2014). When, as here, "the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Knott*, 128 S.W.3d at 216.

If both parties move for summary judgment on the same issues and if the trial court grants one motion and denies the other, we consider the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment that the trial court should have rendered if we conclude that the trial court erred. *Dorsett*, 164 S.W.3d at 661. However, if we conclude that the trial court erred but that a fact issue precludes summary judgment for either party, we remand the cause for trial. *University of Tex. Health Sci. Ctr. v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792, 792 (Tex. 1987); *Garrett Operators, Inc. v. City of Houston*, 461 S.W.3d 585, 590 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

## DISCUSSION

In two issues, HB Aviation contends that the district court erred by denying its motion for summary judgment as to its entitlement to the occasional-sale exemption and by granting the Comptroller's motion for summary judgment on its counterclaim for fraud.

### Occasional-Sale Exemption

HB Aviation's motion for summary judgment contended that its purchase of the aircraft was exempt from taxation as an occasional sale. Occasional sales, as defined in the Tax Code, are exempt from taxation: "[a]n occasional sale of a taxable item and the storage, use, or consumption of a taxable item the sale or transfer of which to a consumer is made by an occasional sale are exempted from the taxes imposed by this chapter." Tex. Tax Code § 151.304(a). The Tax Code defines an "occasional sale," in relevant part, as "one or two sales

10

of taxable items . . . at retail during a 12-month period by a person who does not habitually engage, or hold himself out as engaging, in the business of selling taxable items at retail." *Id.* § 151.304(b)(1).

In its summary-judgment motion, HB Aviation contended that the sale of the aircraft fell within that exemption because Creech's one-time sale of an item in 2009, even if purchased and sold in the same day, is insufficient to establish that he "habitually engage[s]" in the business of selling taxable items. HB Aviation also contended that Creech's same-day purchase and sale of the aircraft was not done "as a business" but as an individual, "completely separate and distinct from Jim Creech Aircraft Services, Inc.," and that it was not a brokered transaction. As support for these contentions, HB Aviation pointed to the Agreement; the bills of sale to Creech individually from Aircraft Business Leasing and from Creech individually to HB Aviation; and Creech's deposition testimony showing that he owned the aircraft, even if for a short period of time, and that this was not a brokered-airplane transaction but "something else." HB Aviation also noted that the transactional documents were public records since 2009, three years before the audit.

The Comptroller's summary-judgment motion contended, among other things, that the sale of the aircraft did not qualify for the occasional-sale exemption because the evidence conclusively established that Creech never made a sale. The Comptroller contended that Creech acted as a broker and received a fee from HB Aviation to arrange its purchase of the aircraft from Business Aircraft Leasing. Because Creech did not buy, own, or sell the aircraft, the Comptroller argued, Creech did not make an occasional sale. Thus, sales and use tax was due on the purchase, and HB was not entitled to return of the collected tax.

11

Whether the occasional-sale exemption in section 151.304 of the Tax Code applies to this transaction is an issue involving statutory construction, which is a question of law that we review de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). When construing a statute, "our primary objective is to give effect to the Legislature's intent as expressed in the statute's language." *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009) (stating that if "the words of a statute are clear and unambiguous, we apply them according to their plain and common meaning"). Tax exemptions are strictly construed against the claimant. *AHF-Arbors at Huntsville I, LLC v. Walker Cnty. Appraisal Dist.*, 410 S.W.3d 831, 837 (Tex. 2012); *Bullock v. National Bancshares Corp. of Tex.*, 584 S.W.2d 268, 271-72 (Tex. 1979) ("An exemption cannot be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of taxing authority and against the claimant."). In tax-exemption cases, the claimant "bears the burden of 'clearly showing' that it falls within the statutory exemption." *Texas Student Hous. Auth. v. Brazos Cnty. Appraisal Dist.*, 460 S.W.3d 137, 140-41 (Tex. 2015) (quoting *North Alamo Water Supply Corp. v. Willacy Cnty. Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991)).

For HB Aviation to "clearly show" its entitlement to the occasional-sale exemption, it must prove the existence of a "sale," as defined in the Tax Code, of the aircraft from Creech to HB Aviation. *See* Tex. Tax Code §§ 151.005(1), .304. Subsection 151.005(1) of the Tax Code states that "'Sale' or 'purchase' means any of the following when done or performed *for consideration*: (1) a transfer of title or possession of tangible personal property." *Id.* § 151.005(1) (emphasis added). Here, Creech did not give consideration—i.e., pay for or buy—the aircraft. The $4.8 million consideration for the sale of the aircraft was wired from HB Aviation to the Oklahoma City escrow company, which then wired payment to Business Aircraft

12

Leasing and wired the difference to Creech. Creech estimated that the fee for brokering a deal on a $4.8 million aircraft would be "a percent or a percent and a half" or about $50,000 or $75,000, and while he was unable to recall how exactly much he was paid for this transaction, he knew it was "[s]omething greater than $10,000." Creech was also "sure" that he paid federal taxes on that fee as "income," not as an investment or capital gain. Because there was no transfer of the aircraft's title to Creech for consideration, there was no "sale" of the aircraft to him as defined in the Tax Code. *See id.* Although HB Aviation states that Creech bought and sold the aircraft "via escrow closings," there was only one escrow closing here because there was only one sale of the aircraft, from Business Aircraft Leasing to HB Aviation, which paid consideration for that item. Creech's testimony about the transaction is consistent with his description of a back-to-back transaction, which is "just a paperwork deal," where "you don't put any money in the deal" and "the title goes from the person I'm buying it from to myself, and then another—another Bill of Sale from me to whoever I'm selling it to. So on paper I've got title to the airplane, but I—I never really owned it." Immediately after that testimony, Creech was asked, "Is that kind of how the transaction was done in this case?" And Creech replied, "Uh-huh. Yes, sir." Creech's specific testimony about this transaction is also consistent with his characterization of HB Aviation's purchase as one of three "back-to back transactions" involving the aircraft and inconsistent with his general conclusion that it was not a "brokered airplane" but "something else."

The Texas Supreme Court has instructed that in determining the plain meaning of tax statutes, courts "should not disregard the economic realities underlying the transactions in issue." *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 637 & n.14 (Tex. 2013) (citing *Frank Lyon Co. v. United States*, 435 U.S. 561, 573 (1978) (noting that "the Court has

13

looked to the objective economic realities of a transaction rather than to the particular form the parties employed" and rejecting "'the simple expedient of drawing up papers' . . . as controlling for tax purposes when the objective economic realities are to the contrary" (citation omitted))); *see Cantu Enters., LLC v. Hegar*, No. 03-15-00516-CV, 2017 Tex. App. LEXIS 6221, at \*15 (Tex. App.—Austin July 7, 2017, no pet.) (mem. op.) (stating that "analysis of the economic reality or substance of the transaction at issue is not improper and can be warranted within the textual parameters of a requested exemption"). The economic reality here is that Creech did not "sell" or pay for the aircraft that HB Aviation purchased. Rather, Creech relied on his industry contacts (like Chuck Mulley and Earl Amos) to match a buyer (HB Aviation) and a seller (Business Aircraft Leasing) and arrange an aircraft sale for a fee, as he had done multiple times through his corporation, Jim Creech Aircraft Services. Because Creech did not "sell" the aircraft to HB Aviation within the meaning of the Tax Code, HB Aviation did not "clearly show" its entitlement to the occasional-sale exemption. *See* Tex. Tax Code §§ 151.005(1), .304. Accordingly, we overrule HB Aviation's contention that the district court erred by denying summary judgment as to HB Aviation's claim of entitlement to the occasional-sale exemption.

**Fraud Counterclaim**

HB Aviation also contends that the Comptroller's motion for summary judgment did not conclusively prove each element of its counterclaim for fraud. Specifically, HB Aviation claims that there is no evidence the "Aircraft Purchase and Sales Agreement" and the Statement of Occasional Sale presented to the Comptroller are fraudulent and instead that the statements therein are "true, correct, and accurate." The Tax Code provides in relevant part, that:

14

> [a]n additional penalty of 50 percent of the tax due shall be imposed if it is determined that: . . . (2) the taxpayer . . . presents to the comptroller any . . . fraudulent record, document, or thing . . . for the apparent purpose of affecting the course or outcome of an audit, investigation, redetermination, or other proceeding before the comptroller.

*Id.* § 111.061(b)(2). In its motion for summary judgment, the Comptroller contended that HB Aviation presented a fraudulent Agreement and Statement of Occasional Sale based on the documents' representations that Creech owned and sold the aircraft. The Comptroller further contended that the only reason for the presentation of those documents was to alter or affect the course of the audit and the redetermination. *See id.* In response to the Comptroller's motion, HB Aviation contended that Creech purchased and, thus, owned the aircraft and that there was no evidence that the documents from 2009—three years before any audit, investigation, redetermination, or other proceeding before the Comptroller—were presented to the Comptroller for the purpose of affecting the outcome of the 2012 audit.

However, the Comptroller showed that HB Aviation presented the Agreement and the Statement of Occasional Sale to the Comptroller during its audit and again during the redetermination proceeding. Presentation of those documents was for their consideration by the Comptroller at the time, i.e., "for the apparent purpose of affecting the course or outcome of" the audit or redetermination. *See id.*

The May 6, 2009 Agreement presented to the Comptroller stated in section 1 that Creech held legal title to the aircraft: "Seller warrants that Seller holds legal title to the Aircraft and that title will be transferred to Buyer free and clear of any liens, claims, charges, or encumbrances." However, HB Aviation knew when it presented this document in 2012 that Creech did not own or hold legal title to the aircraft on May 6, 2009.

15

Section 12 of the Agreement, drafted by HB Aviation's counsel at Coats & Evans, required Creech to execute a Texas Comptroller Occasional Sale form and stated that "Seller [Creech] believes that the sale of the Aircraft by Seller to Buyer [HB Aviation] qualifies as an occasional sale for Texas Sales and Use Tax purposes." But as Coats acknowledged, it was Coats & Evans's belief, not Creech's, that the transaction qualified as an occasional sale based on information that counsel obtained by asking questions of Creech: "[I]t was our understanding that this transaction met the requirements stated in the Texas Tax Code for an occasional sale," and "in all likelihood I found out by asking him." Creech denied awareness of an "occasional sales tax issue," denied responsibility for inclusion of the occasional-sale language in the Agreement, and expressly denied knowing "anything about these kind of documents at the time of this transaction."

Finally, HB Aviation submitted Creech's Statement of Occasional Sale to the Comptroller knowing, as we have discussed above, that the transaction was not an occasional sale. Rather, HB Aviation knew that when selling the aircraft, Creech was acting as a broker in a back-to-back transaction, relying on his industry contacts to match HB Aviation as a buyer and Business Aircraft Leasing as a seller and arranging the aircraft sale for a fee as he had done before in transactions as the owner and only employee of Jim Creech Aircraft Services.

The falsity of the representations in the documents presented to the Comptroller during the audit and the redetermination supported the assessed penalty. *See id.* Accordingly, we overrule HB Aviation's contention that the district court erred by granting the Comptroller's motion for summary judgment on the fraud counterclaim.

16

## CONCLUSION

We affirm the district court's final order denying HB Aviation's claim for refund of use tax paid under protest and assessing a fraud penalty.

 

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Baker and Triana

Affirmed

Filed:   November 20, 2020