ACCEPTED
01-14-00844-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/21/2015 8:30:10 PM
CHRISTOPHER PRINE
CLERK

No. 01-14-00844-CV

In The

# Court of Appeals

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
9/21/2015 8:30:10 PM
CHRISTOPHER A. PRINE
Clerk

## FIRST DISTRICT OF TEXAS
Houston, Texas

**NEIGHBORHOOD CENTERS, INC.,**
*Appellant*,

**versus**

**DOREATHA WALKER,**
*Cross-Appellant and Appellee*.

On appeal from Cause No. 2014-37034 in the
80th District Court, Harris County, Texas

**CROSS-APPELLANT/APPELLEE DOREATHA WALKER'S
RESPONSE TO MOTION FOR REHEARING**

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408
(806) 765-7491 – Phone
(806) 765-0553 – Fax

LORNA L. MCMILLION
*Of the Firm*  SBN 24086726
LMCMILLION@MHBA.COM

LAWRENCE M. DOSS
*Of the Firm*  SBN 24012544
LDOSS@MHBA.COM

ATTORNEYS FOR CROSS-APPELLANT/APPELLEE
September 21, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i
INDEX OF AUTHORITIES ...................................................................... ii
STATEMENT OF FACTS ........................................................................ 2
ARGUMENT AND AUTHORITIES ......................................................... 4

I.    Neighborhood Centers' request for a tunnel-vision analysis of
      Section 12.0158 ignores the Legislature's concurrent amendment
      of Section 12.0156, which provides that charter schools are still
      only immune from liability to the same extent as public schools ........ 5

      A.    Sections 12.0156 and 12.0158 of the Education Code, when
            construed together, are consistent with this Court's Opinion ...... 6

      B.    Legislative history indicates that the scope immunity and
            liability statutes throughout the Texas Codes was meant to
            be expanded rather than limited ..................................................... 8

II.   The general savings clause of the Code Construction Act prevents
      Section 12.1058(c) from extinguishing Walker's accrued rights and
      remedies ...................................................................................................... 12

III.  Applying Section 12.1058(c) in this case would violate the
      Constitutional prohibition against retroactivity .................................. 15

      A.    The Legislative record is silent as to a compelling public
            interest that might justify retroactive application of Section
            12.1058(c) ...................................................................................... 16

      B.    Section 12.1058(c) impairs a cause of action and remedial
            right available under a statute designed to compel government
            compliance with the law .............................................................. 18

      C.    Application of Section 12.1058 to this appeal would entirely
            eliminate Walker's accrued cause of action and remedy ........... 20

CONCLUSION AND PRAYER ............................................................... 23
APPENDICES ...................................................................................... 26

# INDEX OF AUTHORITIES

***Cases***                                                                           ***Page(s)***

*City of Houston v. Houston Firefighters' Relief & Ret. Fund*,
    196 S.W.3d 271 (Tex. App.—Houston [1st Dist.] 2006,
    no pet.) ................................................................................ 14

*City of Houston v. Levingston*,
    221 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2006,
    no pet.) ........................................................................... 18–19

*City of Rockwall v. Hughes*,
    246 S.W.3d 621 (Tex. 2008) ................................................. 6

*City of Tyler v. Likes*,
    962 S.W.2d 489 (Tex. 1997) ......................................... 20, 21

*Dallas Cnty. Cmty. Coll. Dist. v. Bolton*,
    185 S.W.3d 868 (Tex. 2005) ............................................... 13

*Garrett Operators, Inc. v. City of Houston*,
    461 S.W.3d 585 (Tex. App.—Houston [1st Dist.] 2015,
    no pet.) ................................................................................ 16

*Kaiser Aluminum v. Bonjorno*,
    494 U.S. 827 (1990) ........................................................... 22

*Knight v. Int'l Harvester Credit Corp.*,
    627 S.W.2d 382 (Tex. 1982) ............................................... 13

*Kroger Co. v. Keng*,
    23 S.W.3d 347 (Tex. 2000) ................................................... 5

*Landgraf v. USI Film Products*,
    511 U.S. 244 (1994) ...................................................... 15, 22

# INDEX OF AUTHORITIES, CONT.

***Cases cont.***                                                        ***Page(s)***

*Neighborhood Ctrs., Inc. v. Walker*,
　　No. 01-14-00844-CV, 2015 WL 4593436 (Tex. App.
　　—Houston [1st Dist.] July 30, 2015, no. pet. h.) ....................... 2, 6, 10

*Quick v. City of Austin*,
　　7 S.W.3d 109 (Tex. 1998) ........................................................ *passim*

*Robinson v. Crown Cork & Seal Co., Inc.*,
　　335 S.W.3d 126 (Tex. 2010) ..................................................... *passim*

*Tex. Mut. Ins. Co. v. Ruttiger*,
　　381 S.W.3d 430 (Tex. 2012) ................................................................ 6

*Sw. Bell Tel. Co. v. City of Kountze*,
　　543 S.W.2d 871 (Tex. Civ. App.—Beaumont 1976,
　　no writ) ............................................................................................ 21

*Union Carbide Corp. v. Synatzske*,
　　438 S.W.3d 39 (Tex. 2014) .................................................... 6, 17, 19

*Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*,
　　324 S.W.3d 544 (Tex. 2010) ........................................................... 20

***Constitutional Provisions***

U.S. CONST. art I*,* § 9*,* cl. 3.................................................................. 5, 15

TEX. CONST. art I, § 16 ......................................................................... 5, 15

***Statutes***

TEX. EDUC. CODE ANN. § 12.1056 (West 2012) ............................................ 6

TEX. EDUC. CODE ANN. § 12.1056 (West 2012 & Supp. 2015) ............ *passim*

# INDEX OF AUTHORITIES, CONT.

***Statutes (cont.)***                                              ***Page(s)***

TEX. EDUC. CODE ANN. § 12.1058 (Supp. 2015) .................................... *passim*

TEX. GOV'T CODE ANN. § 311.002 (West 2013) .......................................... 13

TEX. GOV'T CODE ANN. § 311.022 (West 2013) .......................................... 12

TEX. GOV'T CODE ANN. § 311.023 (West 2013) ........................................ 6, 8

TEX. GOV'T CODE ANN. § 311.025(b) (West 2013) ....................................... 7

TEX. GOV'T CODE ANN. § 311.031 (West 2013) ...................................... 4, 13

TEX. GOV'T CODE ANN. § 554.001 *et seq.* (West 2013) ........................... 2, 19

***Legislative Materials***

1983 Tex. Gen. Laws 4751 ...................................................................... 19

1993 Tex. Gen. Laws 609 ........................................................................ 19

C.S.H.B. 1170, 84th Leg., R.S. (2015) ...................................................... 3, 11

H. Rep. on H.B. 1170 (2015) .................................................................... 11

H.B. 1075, 68th Leg., R.S. (1983) ............................................................ 19

H.B. 1170, 84th Leg., R.S. (2015) ............................................................ 11

H.B. 1171, 84th Leg., R.S. (2015) ......................................................... 3, 8, 9

*History of House Bill 1170*, Texas Legislature Online,
http://www.legis.state.tx.us/BillLookup/history.aspx?LegSess
=84R&Bill=HB1170 (last visited September 21, 2015) ............................. 11

# INDEX OF AUTHORITIES, CONT.

*Legislative Materials (cont.)*                                    *Page(s)*

S. Rep. on C.S.H.B. 1170 (substituted on May 20, 2015)....................... 10, 17

S.B. 248, 73d Leg., R.S. (1993)..................................................................... 19

SRC-DDS H.B. 1171 84(R) (2015)............................................................... 9

No. 01-14-00844-CV

In The

# Court of Appeals

FIRST DISTRICT OF TEXAS
Houston, Texas

---

**NEIGHBORHOOD CENTERS, INC.,**
*Appellant*,

**versus**

**DOREATHA WALKER,**
*Cross-Appellant and Appellee*.

---

On appeal from Cause No. 2014-37034 in the
80th District Court, Harris County, Texas

---

**CROSS-APPELLANT/APPELLEE DOREATHA WALKER'S
RESPONSE TO MOTION FOR REHEARING**

---

Pursuant to Tex. R. App. P. 10.1(b), Cross-Appellant/Appellee Doreatha Walker ("Walker") files this Response to Appellant Neighborhood Centers, Inc.'s ("Neighborhood Centers") Motion for Rehearing, requests that the Court deny said Motion, and respectfully shows the court as follows:

1

## STATEMENT OF FACTS

On July 30, 2015, this Court issued its opinion overruling Neighborhood Centers' only issue on appeal—the denial of its plea to the jurisdiction for Walker's claim under Section 554.001 et seq. of the Texas Government Code (the "Whistleblower Protection Act"). *See Neighborhood Ctrs., Inc. v. Walker*, No. 01-14-00844-CV, 2015 WL 4593436 (Tex. App.—Houston [1st Dist.] July 30, 2015, no. pet. h.) (the "Opinion"). In doing so, this Court held the Act's provisions waiving sovereign immunity for local government entities conferred subject-matter jurisdiction upon the trial court and prevented the dismissal of Walker's cause of action. *Id.* at *4.

This Court noted that the Texas Education Code expressly waives an open-enrollment charter school's immunity from liability "to the same extent as a public school district." *See id*. Because a "public school district" falls within the statutory definition of a "local governmental entity" covered by the Whistleblower Protection Act, this Court reasoned the Legislature's waiver of immunity for claims made by "public employees" of "public school districts" rendered it "beyond doubt" that the same is true for claims made by employees of an open-enrollment charter school. *See id*. The Court correctly

concluded that an open-enrollment charter school constitutes a "local governmental entity" subject to the Whistleblower Protection Act.

While this appeal was pending, the Legislature introduced two bills amending portions of the Texas Education Code that are relevant to this appeal and which Neighborhood Centers now argues render the Whistleblower Protection Act inapplicable to open-enrollment charter schools.

The first bill, H.B. 1170 added a new Section, 12.1058, entitled "Applicability to Other Laws." C.S.H.B. 1170, 84th Leg., R.S. (2015). The second bill, H.B. 1171 amended previous Section 12.1056, now entitled "Immunity from Liability and Suit." H.B. 1171, 84th Leg., R.S. (2015). These bills became effective on June 19, 2015 and June 18, 2015, respectively, which was after oral arguments were heard in this case but before this Court issued its Opinion.

Neighborhood Centers moved for rehearing on August 14, 2015, arguing that newly-enacted Section 12.0158(c) renders this Court's opinion invalid because the Legislature indirectly repealed waivers of immunity under the Whistleblower Protection Act.

## ARGUMENT AND AUTHORITIES

In light of these amendments to the Education Code and their June 2015 effective dates, Neighborhood Centers asks this Court to determine whether the Legislature abrogated subject-matter jurisdiction in this case. It has not for three reasons.

First, the plain language of Sections 12.056 and 12.058, when construed together, reveal that charter schools continue to retain immunity from liability and suit "to the same extent as a school district" and thus, the Whistleblower Protection Act and subject matter-jurisdiction thereunder are unaffected by the amendments.

Second, even if Section 12.018(c) can be read to indirectly repeal a cause of action and waiver of immunity under the Whistleblower Protection Act, the Legislature did not intend to circumvent the default savings clause of the Texas Code Construction Act, which provides that statutory amendments do not deprive litigants in *pending* cases from accrued rights or remedies. *See* Tex. Gov't Code Ann. § 311.031(a) (West 2013).

Third, even if the general savings clause does not apply, application of Section 12.1058(c) to this appeal would deprive Walker of her accrued rights and remedies in direct violation of the constitutional prohibition against

4

retroactive legislation. *See* U.S. CONST. art I, § 9, cl. 3; TEX. CONST. art I, § 16; *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 139 (Tex. 2010) ("The presumption is that a retroactive law is unconstitutional without a compelling justification [. . .]."

For these reasons, this Court should deny Neighborhood Centers' Motion for Rehearing.

I. **Neighborhood Centers' request for a tunnel-vision analysis of Section 12.0158 ignores the Legislature's concurrent amendment of Section 12.0156, which provides that charter schools are still only immune from liability to the same extent as public schools.**

Contrary to established rules of statutory construction, Neighborhood Centers asks this Court to construe solely Section 12.1058's provisions regarding applicability to other laws as indirectly repealing the applicability of the Whistleblower Protection Act's waiver of immunity to open-enrollment charter schools. *But see Kroger Co. v. Keng*, 23 S.W.3d 347, 351 (Tex. 2000) (noting that repeal by implication is disfavored under Texas law). In asking the Court for a tunnel-vision interpretation of immunity under the new statute, Neighborhood Centers fatally ignores the Legislature's concurrent amendment of Section 12.1056, which *expressly* addresses immunity for open-enrollment schools.

*A.* Sections 12.0156 and 12.0158 of the Education Code, when construed together, are consistent with this Court's Opinio*n.*

In construing a statute, the court's "primary objective is to ascertain the Legislature's intent, and [it does] that, if possible, through the words the Legislature selected." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008); *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 51 (Tex. 2014). The court derives the Legislature's intent "from the statute as a whole, not by reading individual provisions in isolation." *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 454 (Tex. 2012).

Amended Section 12.1056 still provides, consistent with this Court's Opinion, that an open-enrollment charter school is immune from liability "to the same extent as a public school district." *Neighborhood Ctrs.*, 2015 WL 4593436, at *4 (citing TEX. EDUC. ANN. § 12.1056(a) (West 2012)). The only substantive additions to this Section are that it now states "an open-enrollment charter school *or charter holder* is immune from liability *and suit* to the same extent as a school district." (additions in italics). *See* § 12.1056(a); App'x A.

Any analysis of Section 12.0158(c)'s provisions relating to "other laws" must necessarily be read in light of Section 12.0156's "same extent" language. TEX. GOV'T CODE § 311.023 ("In construing a statute, whether or

6

not the statute is considered ambiguous on its face, a court may consider [. . .] former statutory provisions [and] consequences of a particular construction.")

The allegedly offending passage of Section 12.0158(c) states:

(c)  Notwithstanding Subsection (a) or (b), an open-enrollment charter school operated by a tax exempt entity as described by Section 12.101(a)(3) is not considered to be a political subdivision, local government, or local governmental entity unless the applicable statute specifically states that the statute applies to an open-enrollment charter school.

TEX. EDUC. CODE § 12.0158(c). Note that the subsection references "the applicable statute." For purposes of the application of immunity and liability to other laws, the applicable statute is Section 12.1056(a). Therefore, the scope of immunity or liability for open-enrollment charter schools under other laws via Section 12.0158, must be determined to the same extent as immunity or liability applies to public school districts pursuant to Section 12.0156. *Compare* § 12.0158(c), *with* § 12.0156(a).

To the extent Neighborhood Centers may have argued (though it did not) that these two Sections are irreconcilable, this Court must attempt to harmonize them. TEX. GOV'T CODE § 311.025(b) ("[I]f amendments to the same statute are enacted at the same session of the legislature, one amendment without reference to another, the amendments shall be harmonized, if possible, so that effect may be given to each [. . .].").

Contrary to Neighborhood Centers' assertion that Section 12.1058 was enacted to "clarify[ ] that there is no jurisdiction over an open-enrollment charter school under the Whistleblower Act," the statutory construction of Sections 12.0158 and 12.1056 weigh against this assertion. *See* Mot. for Reh'g, at 6. Following this same analysis, the Legislature did not enact Section 12.1058 with the intent to "strip[ ] the court of jurisdiction" in this case or render the Whistleblower Protection Act "[in]applicable to open-enrollment charter schools." *See* Mot. for Reh'g, at 6–7. The interpretation suggested by Neighborhood Centers would render Section 12.1056 to be surplussage. Therefore, this Court's interpretation of the statute was accurate and should not be modified.

> *B. Legislative history indicates that the scope immunity and liability statutes throughout the Texas Codes was meant to be expanded rather than limited.*

The circumstances surrounding the passage of H.B. 1170 and H.B. 1171 and their respective legislative histories are particularly instructive in determining the Legislature's intent, and this Court may use this context to aid its interpretation. TEX. GOV'T CODE § 311.023 ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may

8

consider among other matters the [. . .] circumstances under which the statute was enacted [and] legislative history.")

The Senate Research Center's published analysis of H.B. 1171 explains that Section 12.1056's provisions regarding immunity from liability were updated to reflect current appellate court decisions applying immunity to charter schools to the same extent as public school districts. SRC-DDS H.B. 1171 84(R), at 1 (2015). The Author's Statement of Intent clarifies:

> Currently, open-enrollment charter schools enjoy the same immunity from liability that public schools do; however, the law is less clear on the degree to which charters are immune from suit or subject to liability limits under the Texas Torts Claims Act. Recently, the Dallas Court of Appeals ruled that charters should be treated the same as public schools with regard to immunity from suit. Because this ruling only applies to that court's jurisdiction, however, charter schools will continue to fight costly legal battles to dismiss suits that should not have been filed in the first place.
>
> H.B. 1171 *addresses the uncertainties* surrounding charter schools' legal status *by defining them as public schools for purposes of immunity from both liability and suit*. The bill also clarifies that charter schools are eligible for the cap on liabilities under the Texas Torts Claims Act. These provisions will keep schools from expending their limited budgets on expensive court costs, and ensure that public money meant for education remains in the classrooms.

*Id.* at 1 (emphasis added); *See* App'x. B. As this analysis states, Section 12.0156 expands the application of immunity from liability and suit to charter

9

schools by ensuring they are clearly defined as public schools. Such interpretation is consistent with this Court's opinion holding the same. *Neighborhood Ctrs.*, 2015 WL 4593436, at \*4.

The Legislature provides no similar analysis for H.B. 1070. Rather, than addressing liability concerns, H.B. 1070 was enacted to permit charter schools to enter into certain collective bargaining and risk management arrangements, in the same manner as public school districts, in order to "strengthen the districts' bargaining positions for purchasing materials and contracting for services, and dilute the unforeseen costs of insurance claims." *See* S. Rep. on C.S.H.B. 1170, at 1 (substituted on May 30, 2015).

In keeping with the Legislature's intent to give charter schools and their employees the same benefits as public schools, subsection (a) of Section 12.1058 establishes that an open-enrollment charter school constitutes (1) a "local government" under the Interlocal Cooperation Act, (2) a "local government" under self-insurance statutes applicable to governmental units, and (3) a "political subdivision" under the Texas Political Subdivision Employees Uniform Group Benefits Act. *See* Tex. Educ. Code § 12.1058(a).

Subsection (b) authorizes an extension of workers' compensation benefits to employees of charter schools "under Labor Code provisions

10

relating to workers' compensation insurance coverage for employees of political subdivisions." *See* H. Rep. on H.B. 1170, at 1 (2015).

In a last-minute amendment to H.B 1170, the Legislature added subsection (c), providing that a charter school otherwise does not constitute a political subdivision, local government, or local governmental entity, "unless the applicable statute specifically states that the statute applies to an open-enrollment charter school." TEX. EDUC. CODE § 12.1058(c).[1]

H.B. 1170's legislative history neither expresses no intent to abrogate immunity provisions in other sections of Texas Codes. Rather, H.B. 1170 adds benefits and bargaining measures that were previously unavailable to charter schools, and Section 12.1058(c) was likely added to clarify in what circumstances additional benefit, bargaining, and insurance provisions in the Texas Codes would apply to open-enrollment charter schools.

An analysis of the plain language of Sections 12.1056(a) and 12.0158(c) as a whole and a review their concurrent legislative histories demonstrates that Neighborhood Centers is still a "local government entity"

---

[1] *Compare* H.B. 1170, 84th Leg., R.S. (filed on February 5, 2015), *with* C.S.H.B. 1170, 84th Leg., R.S. (substituted for H.B. 1170 on May 27, 2015); *see also History of House Bill 1170*, Texas Legislature Online, http://www.legis.state.tx.us/BillLookup/history. aspx?LegSess=84R&Bill=HB1170 (last visited Sept. 21, 2015).

pursuant to the Whistleblower Protection Act despite recent statutory amendments. As such, this Court and the trial court have subject-matter jurisdiction over Walker's claim, and this Court's Opinion should stand.

## II. The general savings clause of the Code Construction Act prevents Section 12.1058(c) from extinguishing Walker's accrued rights and remedies.

Neighborhood Centers argues that Walker has been deprived of her cause of action under the Whistleblower Protection Act because Section 12.1058(c) now prevents this Court from treating an open-enrollment charter school as a "local governmental entity" under it. *See* Mot. for Reh'g, at 3. Neighborhood Centers is wrong.

Assuming, arguendo, that H.B. 1070 indirectly repealed Walker's cause of action under the Whistleblower Protection Act, the statute only applies prospectively and is not applicable to this appeal in which Walker's rights had accrued prior to Section 12.1058(c)'s enactment. *See* TEX. GOV'T CODE § 311.022 ("A statute is presumed to be prospective in its operation unless expressly made retrospective".)

Walker does not dispute that "when a right or remedy is dependent on a statute, the unqualified repeal of that statute operates to deprive the party of all such rights that have not become vested or reduced to final judgment." *See*

*Quick v. City of Austin*, 7 S.W.3d 109, 128 (Tex. 1999) (op. on reh'g). In such cases, "if final relief has not been granted before the repeal goes into effect, final relief cannot be granted thereafter, even if the cause is pending on appeal." *Id.* (*citing Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382, 284 (Tex. 1982)). But the Texas Supreme Court has noted that this common-law rule of abatement "may be modified by a specific savings clause in the repealing legislation or by a general savings statute limiting the effect of repeals." *Quick*, 7 S.W.3d at 128. The savings statute is codified in the Texas Code Construction Act and applies to the Texas Education Code. TEX. GOV'T CODE §§ 311.002, 311.031; *see Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 873–74 (Tex. 2005) (using the Code Construction Act to interpret a provision of the Education Code).

This general savings statute provides, in pertinent part, that repeal of a statute does not affect (1) the "prior operation of the statute or any prior action taken under it"; (2) "any right [. . .] obligation [. . .] or liability previously acquired, accrued, accorded, or incurred under it"; or (3) any [. . .] proceeding, or remedy" concerning any "obligation, liability, penalty, [. . .] or punishment." TEX. GOV'T CODE § 311.031(a). Such a "proceeding[ ] or remedy may be instituted, continued, or enforced [as if the statute] had not

13

been repealed or amended." *See id*. The Texas Supreme Court has explained that the general savings statute "indicates a general legislative policy that the repeal of any statute shall not affect the prior operation of that statute" or "extinguish any liability incurred or affect any right accrued or claim arising before the repeal takes effect." *Quick*, 7 S.W.3d at 130.

Reviewing courts must presume that the general savings statute applies "unless a contrary legislative intent is shown by clear expression or necessary implication." *Id*. Similarly, this Court has relied upon a savings clause "to avoid a retroactive application of a statute if the newly enacted statute repeals a cause of action or revokes a special remedy." *City of Houston v. Houston Firefighters' Relief & Ret. Fund*, 196 S.W.3d 271, 283 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

In *Quick*, the Texas Supreme Court held that under the general savings clause, a recent repeal did not affect the prior operation of a statute or deprive the court of subject-matter jurisdiction to consider the party's claims, where the Legislature nowhere stated that the savings clause did not apply. *Quick*, 7 S.W.3d at 130. The same rationale applies in this case.

In passing the amended H.B. 1170, the Legislature expressed no contrary legislative intent to overcome the presumption that the savings

14

clause applies, nor is there any necessary implication that Section 12.1058 must be applied retroactively.[2] Contrary to Neighborhood Centers' assertion that amendment applies to this current appeal, neither the statute nor its legislative history include instruction that the amendment reaches back to claims pending before the statute's effective date. *See* Mot. for Reh'g, at 5. Nor is there any indication that the general savings statute cannot be applied. In the absence of contrary legislative intent, this Court must presume the savings clause applies and conclude that Section 12.1058(c) does not affect any accrued right or remedy under the prior operation of the Whistleblower Protection Act. As such, Neighborhood Centers' Motion for Rehearing should be denied.

### III. Applying Section 12.1058(c) in this case would violate the Constitutional prohibition against retroactivity.

Even if the Legislature did intend to circumvent the general savings statute, Section 12.1058(c) cannot deprive Walker of her remaining cause of action without violating the United States and Texas constitutional prohibitions against retroactive legislation. *See* U.S. CONST. art I, § 9, cl. 3; TEX. CONST. art I, § 16.

---

[2] *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 280 (1994) (noting that when a bill takes effect upon enactment, courts must utilize "ordinary judicial principles concerning the application of new rules to pending cases").

15

"Laws are deemed retrospective and within the constitutional prohibition" if they retrospectively "destroy or impair[ ] vested rights." *Robinson*, 335 S.W.3d at 139–40 (internal quotation omitted). A statute that "takes away or impairs vested rights acquired under existing laws, or creates a new obligation [. . .] in respect to transactions or considerations already past" must be deemed impermissibly retroactive. *Id*. (internal quotation omitted).

In determining whether a statute violates the prohibition against retroactivity, courts consider three factors as set forth by the Texas Supreme Court in *Robinson*: (1) the nature and strength of the public interest served by the statute as evidenced by the Legislature's factual findings; (2) the nature of the prior right impaired by the statute; and (3) the extent of the impairment. *Id*. at 145. Each of these factors weighs against the application of Section 12.1058(c) in the manner suggested by Neighborhood Centers. *Cf. Robinson*, 335 S.W.3d at 145–46.

*A. The Legislative record is silent as to a compelling public interest that might justify retroactive application of Section 12.1058(c).*

Courts examine the first *Robinson* factor—the nature and strength of the public interest served by the statute—based on the Legislature's factual findings. *Id.* at 145; *Garrett Operators, Inc. v. City of Houston*, 461 S.W.3d 585, 595 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The constitutional

16

prohibition against retroactive laws "preempt[s] this weighing of interests absent compelling reasons." *Robinson*, 335 S.W.3d at 150 ("Indeed, it is precisely because retroactive rectification of perceived injustice seems so reasonable and even necessary, especially when there are few to complain, that the constitution prohibits it.").

Compelling interests, then, can only be demonstrated by specific findings by the Legislature. *Compare id.* at 149 (holding retroactive application of a statute unconstitutional where the Legislature's lack of findings on the extent of a generalized benefit did not amount to a compelling interest even though the benefit could be inferred from the record), *with Union Carbide*, 438 S.W.3d at 57 (permitting retroactive application only where "[t]he Legislature provided extensive findings to support [the statute's] enactment and its effects.").

As explained above, Section 12.1058 was designed to permit open-enrollment charter schools to enter into certain collective-bargaining and risk-management arrangements. *See* S. Rep. on C.S.H.B. 1170, at 1 (substituted on May 20, 2015). In the absence of legislative findings on this objective, the record is silent as to the extent of the intended benefits of Section 12.1058 as a whole. *See Robinson*, 335 S.W.3d at 149.

17

More importantly, nothing suggests that the language in subsection (c)—the portion that indirectly affects the Whistleblower Protection Act—was designed to serve any public interest by repealing a cause of action or waiver of immunity under the Act. Maintaining an established cause of action enjoys greater deference than clarifying the impact of unrelated legislation. *Id.* at 148 (noting that a choice-of-law amendment extinguished a cause of action "indirectly," and that "[a]n interest in maintaining an established common-law cause of action is greater than an interest in choice-of-law rules").

Because the record is silent as to the extent of benefits of Section 12.1058 and as to any public interest that might be served by repealing waivers of immunity under the Whistleblower Protection Act, no compelling interest justifies retroactive application of the statute. *Cf. id.*

> *B. Section 12.1058(c) impairs a cause of action and remedial right available under a statute designed to compel government compliance with the law.*

Turning to the second *Robinson* factor, the nature of Walker's affected interest arises from a remedial statute "designed to enhance openness in government and to compel the government's compliance with law by protecting those who inform authorities of wrongdoing." *City of Houston v.*

18

*Levingston*, 221 S.W.3d 204, 218 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citations omitted). The Whistleblower Protection Act was enacted over thirty years ago to protect public employees and to secure lawful conduct of state and local governmental entities, including public school districts. *See id.*[3] The Legislature expressed no desire to disturb these significant and well-established objectives.

Additionally, Walker had a well-settled expectation that the rule of law that permitting her recovery would not be changed after she filed suit. *Cf. Robinson*, 335 S.W.3d at 148. ("The Robinsons could well have expected [. . .] that a rule of law that permitted their recovery [. . .] would not be changed after they had filed suit to abrogate their claim."). Walker's rights not only existed but had also accrued prior to the enactment of Section 12.1058(c).

As such, this appeal is distinguishable from cases where retroactive application was allowed for statutes affecting only remedial rights. *See, e.g., Union Carbide*, 438 S.W.3d at 59 ("We fail to see how [the plaintiffs]

---

[3] *See also* H.B. 1075, 68th Leg., R.S., ch. 832, § 3 (1983), 1983 Tex. Gen. Laws 4751, 4752, *repealed by* S.B. 248, 73d Leg., R.S., ch. 268, §§ 1, 47, (1993), 1993 Tex. Gen. Laws 609, 986 (codified at TEX. GOV'T CODE § 554.001–09). That this appeal was taken from a ruling on a plea to the jurisdiction and stayed before Walker could discover additional facts to support the merits of her claim should not affect this Court's inquiry.

reasonably could have had settled expectations that the Legislature would not change the requirements for a wrongful death lawsuit [. . .] when they have not demonstrated that they were contemplating such a suit before Chapter 90 became effective."); *City of Tyler v. Likes*, 962 S.W.2d 489, 502 (Tex. 1997) (holding that a statute was not unconstitutionally retroactive when the plaintiff had two months to sue before it became effective).

### C. Application of Section 12.1058 to this appeal would entirely eliminate Walker's accrued cause of action and remedy.

Finally, with respect to the third *Robinson* factor, Section 12.1058(c) would not merely "impact" Walker's accrued rights and remedies—it would impermissibly eliminate them altogether. *See Robinson*, 335 S.W.3d at 145; *Quick*, 7 S.W.3d at 140. According to Neighborhood Centers, this factor does not implicate the constitutional prohibition against retroactivity because the effect may be viewed as partly jurisdictional in nature. *See* Mot. for Reh'g, at 7.

It is true that the general rule prohibiting retroactive legislation does not ordinarily apply to "procedural, remedial, or jurisdictional statutes, because such statutes *typically* do not affect a vested right." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Arancibia*, 324 S.W.3d 544, 547 (Tex. 2010) (emphasis added). But this rule does *not* apply if the amendment effectively "bar[s] all

20

remedy," takes away the remedy altogether, or encumbers it with conditions that would render it "useless or impracticable to pursue." *See Quick*, 7 S.W.3d at 140.

A statute that merely regulates a remedy or proscribes a mode or time of proceeding may fairly be applied in pending cases initiated before the effective date. *Id.* For example, "[t]he Legislature can affect a remedy by providing a shorter limitations period for an accrued cause of action without violating the retroactivity provision of the Constitution, if it affords a reasonable time or fair opportunity to preserve a claimant's rights under the former law." *Id.*; *see Sw. Bell Tel. Co. v. City of Kountze*, 543 S.W.2d 871, 874–75 (Tex. Civ. App.—Beaumont 1976, no writ) (applying statute granting agency exclusive jurisdiction over claim pending on interlocutory appeal, and requiring trial court to dismiss suit because the statute did not "destroy the rights of plaintiff; it simply [took] away from the trial court the jurisdiction to adjudicate the question and conferred the exclusive jurisdiction upon another tribunal [. . .]"). But laws affecting a remedy are unconstitutionally retroactive if "the remedy is entirely *taken away*." *Likes*, 962 S.W.3d at 502 (emphasis in original, internal quotation omitted).

21

Because Neighborhood Centers' suggested reading of Section 12.1058(c) effectively repeals both an accrued cause of action and waiver of immunity under the Whistleblower Protection Act, retroactive application of the statute would be unconstitutional.

In the end, each of these factors is designed to ensure that new laws are applied in a manner consistent with principles of fairness and reasonable expectations of the parties. As the United States Supreme Court has held:

> Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.

*Landgraf*, 511 U.S. at 265 (quoting *Kaiser Aluminum v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)).

Because fairness, equity, and the applicable factors prevent the retroactive application of Texas Education Code Section 12.1058(c) in a manner that deprives Walker of accrued rights and remedies, jurisdiction remains. As such, Neighborhood Centers' motion for rehearing should be denied.

22

## CONCLUSION AND PRAYER

The general savings statute of the Code Construction Act preserves the prior operation of the Whistleblower Protection Act and the rights and remedies that accrued thereunder prior to the enactment of Section 12.1058(c). Regardless of this provision, retroactive application of Section 12.1058(c) would be unconstitutional. Therefore, this Court had subject matter jurisdiction when it issued its opinion: its judgment should stand.

Accordingly, Cross-Appellee Doreatha Walker requests that the Court deny Appellant Neighborhood Centers, Inc.'s Motion for Rehearing. Walker prays for any additional or alternative relief to which she may be entitled.

Respectfully Submitted,

MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
(806) 765-7491 – Phone
(806) 765-0553 – Fax
LMCMILLION@MHBA.COM
LDOSS@MHBA.COM

By: /s/ Lorna L. McMillion
    Lorna L. McMillion
    SBN 24086726
    Lawrence M. Doss
    SBN 24012544
ATTORNEYS FOR CROSS-APPELLANT/
APPELLEE DOREATHA WALKER

## CERTIFICATE OF COMPLIANCE

I do hereby certify that the relevant contents of this document consist of 4,461 words, in compliance with TEX. R. APP. P. 9.4, and this document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14 point Times New Roman font.

By:  /s/ Lorna L. McMillion
     Lorna L. McMillion

24

## CERTIFICATE OF SERVICE

I further certify that on September 21, 2015, a true and correct copy of the foregoing document was sent to all counsel of record as indicated below:

Linda P. Wills
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, L.L.P.
909 Fannin St., Ste. 3300
Houston, TX 77010
Telephone: 713-353-2000
Facsimile: 713-785-7780
linda.wills@wilsonelser.com

By:   /s/ Lorna L. McMillion
        Lorna L. McMillion

H.B. No. 1171

AN ACT

relating to the applicability of certain immunity and liability laws to open-enrollment charter schools.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 12.1056, Education Code, is amended to read as follows:

Sec. 12.1056. IMMUNITY FROM LIABILITY AND SUIT. (a) In matters related to operation of an open-enrollment charter school, an open-enrollment charter school or charter holder is immune from liability and suit to the same extent as a school district, and the [its] employees and volunteers of the open-enrollment charter school or charter holder are immune from liability and suit to the same extent as school district employees and volunteers. A member of the governing body of an open-enrollment charter school or of a charter holder is immune from liability and suit to the same extent as a school district trustee.

(b) An open-enrollment charter school is a governmental unit as defined by Section 101.001, Civil Practice and Remedies Code, and is subject to liability only as provided by Chapter 101, Civil Practice and Remedies Code, and only in the manner that liability is provided by that chapter for a school district.

(c) An open-enrollment charter school is a local government as defined by Section 102.001, Civil Practice and Remedies Code, and a payment on a tort claim must comply with Chapter 102, Civil

1

Practice and Remedies Code.

(d) An open-enrollment charter school is a local governmental entity as defined by Section 271.151, Local Government Code, and is subject to liability on a contract as provided by Subchapter I, Chapter 271, Local Government Code, and only in the manner that liability is provided by that subchapter for a school district.

SECTION 2. This Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution. If this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2015.

H.B. No. 1171

_____     _____
          President of the Senate                      Speaker of the House

        I certify that H.B. No. 1171 was passed by the House on May 8, 2015, by the following vote:  Yeas 140, Nays 0, 1 present, not voting; and that the House concurred in Senate amendments to H.B. No. 1171 on May 29, 2015, by the following vote:  Yeas 143, Nays 1, 2 present, not voting.

                                      _____
                                                Chief Clerk of the House

        I certify that H.B. No. 1171 was passed by the Senate, with amendments, on May 27, 2015, by the following vote:  Yeas 31, Nays 0.

                                      _____
                                                Secretary of the Senate

APPROVED: _____
                Date


_____
        Governor

3

# BILL ANALYSIS

Senate Research Center

84R7567 CAE-F

H.B. 1171

By: Farney et al. (Lucio)

Education

5/13/2015

Engrossed

## AUTHOR'S / SPONSOR'S STATEMENT OF INTENT

Currently, open-enrollment charter schools enjoy the same immunity from liability that public schools do; however, the law is less clear on the degree to which charters are immune from suit or subject to liability limits under the Texas Torts Claims Act. Recently, the Dallas Court of Appeals ruled that charters should be treated the same as public schools with regard to immunity from suit. Because this ruling only applies to that court's jurisdiction, however, charter schools will continue to fight costly legal battles to dismiss suits that should not have been filed in the first place.

H.B. 1171 addresses the uncertainties surrounding charter schools' legal status by defining them as public schools for purposes of immunity from both liability and suit. The bill also clarifies that charter schools are eligible for the cap on liabilities under the Texas Torts Claims Act. These provisions will keep schools from expending their limited budgets on expensive court costs, and ensure that public money meant for education remains in the classrooms.

H.B. 1171 amends current law relating to the applicability of certain immunity and liability laws to open-enrollment charter schools.

## RULEMAKING AUTHORITY

This bill does not expressly grant any additional rulemaking authority to a state officer, institution, or agency.

## SECTION BY SECTION ANALYSIS

SECTION 1.  Amends Section 12.1056, Education Code, as follows:

Sec. 12.1056.  New heading: IMMUNITY.  (a) Creates this subsection from existing text. Provides that an open-enrollment charter school or charter holder, in matters related to operation of an open-enrollment charter school, is immune to the same extent as a school district, and the employees and volunteers of the open-enrollment charter school or charter holder are immune to the same extent as school district employees and volunteers, rather than providing that an open-enrollment charter school, in matters related to operation of an open-enrollment charter school, is immune from liability to the same extent as a school district, and its employees and volunteers are immune from liability to the same extent as school district employees and volunteers.  Provides that a member of the governing body of an open-enrollment charter school or of a charter holder is immune to the same extent as a school district trustee, rather than immune from liability to the same extent as a school district trustee.

(b) Provides that an open-enrollment charter school is a governmental unit as defined by Section 101.001 (Definitions), Civil Practice and Remedies Code, and is subject to liability only as provided by Chapter 101 (Tort Claims), Civil Practice and Remedies Code, and only in the manner that liability is provided by that chapter for a school district.

(c) Provides that an open-enrollment charter school is a local government as defined by Section 102.001 (Definitions), Civil Practice and Remedies Code, and

a payment on a tort claim must comply with Chapter 102 (Tort Claims Payments by Local Governments), Civil Practice and Remedies Code.

(d)  Provides that an open-enrollment charter school is a local governmental entity as defined by Section 271.151 (Definitions), Local Government Code, and is subject to liability on a contract as provided by Subchapter I (Adjudication of Claims Arising Under Written Contracts with Local Governmental Entities), Chapter 271 (Purchasing and Contracting Authority of Municipalities, Counties, and Certain other Local Governments), Local Government Code, and only in the manner that liability is provided by that subchapter for a school district.

SECTION 2.  Effective date: upon passage or September 1, 2015.