**Opinion issued February 22, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00319-CV

————————————

**DAVID PATRICK DANIEL, JR., Appellant**

**V.**

**JENNIFER LEIGH MORRIS, PHILIP PLACZEK, AND PLACZEK LAW, PLLC, Appellees**

---

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Case No. 2019-78634**

---

## MEMORANDUM OPINION

This appeal arises from a lawsuit between former spouses concerning whether the ex-wife violated the confidentiality provisions of a settlement agreement they executed to resolve custody and defamation lawsuits between them. Also ensnarled in the current lawsuit is the mediator who facilitated their settlement agreement.

The trial court granted summary judgment in favor of the ex-wife and mediator, entering a final take-nothing judgment on all the ex-husband's claims. The ex-husband appeals. Based on the summary-judgment record, we conclude that the trial court properly dismissed some claims but not others. Accordingly, we affirm the trial court's judgment in part, reverse the trial court's judgment in part, and remand this cause to that court for further proceedings consistent with our opinion.

## BACKGROUND

David Patrick Daniel, Jr. and his ex-wife, Jennifer Leigh Morris, became embroiled in litigation after their divorce. Daniel sued Morris for defamation, and Morris filed suit to modify the custodial arrangements concerning their child. They mediated these suits and resolved them in a single settlement agreement. Or so it briefly seemed. Daniel now sues Morris, as well as the mediator and his law firm, alleging that they violated the settlement agreement's confidentiality provisions.

In relevant part, the settlement agreement identifies the parties entering into it as Daniel and Morris (who is identified by her maiden name Garrett). They agreed that the agreement is irrevocable and that either party is entitled to a judgment based on the agreement. The agreement spells out the custody arrangements of their child and the parties' child-support obligations. Under the agreement, the parties were obliged to dismiss their respective lawsuits, and Daniel was to pay Morris $155,000.

The settlement agreement also had several confidentiality provisions. First, the agreement provided that the parties would enter into a confidentiality agreement about the claims and allegations they made and seal certain court-filed documents. Second, the agreement prohibited the parties and their spouses from disclosing or distributing in any manner information or documents relating to the two lawsuits. Third, the agreement prohibited Morris and her new husband from contacting the lawyers, their agents, or anyone affiliated with a family-law proceeding in Wisconsin to which Daniel's new wife was a party. In the event that Daniel sued Morris or her husband, the confidentiality provisions of the suit would be waived.

The settlement agreement also provided that a violation of its terms would render the agreement null and void. In this event, Daniel was entitled to the return of all consideration he paid within 24 hours of him giving notice of the violation.

The mediator, Philip Placzek, was not a party to the settlement agreement. But along with Daniel and Morris, he signed it under a signature block indicating that the signatories both approved and agreed to the terms of the settlement agreement.

In his live pleading, Daniel asserts a claim for breach of contract against Morris, Placzek, and Placzek's firm for breaching the settlement agreement's confidentiality provisions. On the same basis, he seeks a declaration that the settlement agreement is null and void, as well as rescission, including the return of consideration he paid. Finally, Daniel asserts a malpractice claim against Placzek

3

and his firm on the ground that Placzek violated his duty of confidentiality in his capacity as mediator.

Daniel alleges several particular breaches of confidentiality, including:

- on June 18, 2019, Morris, Placzek, and his firm filed an unsealed and unredacted copy of the settlement agreement in the custody suit;

- on August 6, 2019, Morris filed an unsealed and unredacted proposed order containing the settlement agreement's terms; and

- on August 9, 2019, Morris filed an unsealed and unredacted motion seeking entry of the proposed order containing the agreement's terms.

Morris moved for traditional and no-evidence summary judgment. She asserted that there is no evidence she breached the confidentiality provisions of the settlement agreement. Morris also argued that the summary-judgment evidence—including her own affidavit and the affidavit of a third party associated with her and Daniel's child's school—showed she did not breach the confidentiality provisions.

Placzek and his firm likewise moved for traditional and no-evidence summary judgment but on different grounds. With respect to breach of contract, they asserted that there is no evidence they were parties to the settlement agreement or that they received any consideration binding them to this agreement. Regarding rescission, they asserted that there is no evidence Daniel offered to restore any consideration or benefit he received, which they posited to be a requisite for rescission. As to Daniel's malpractice claim, they asserted entitlement to traditional summary judgment on the basis that Daniel's pleading shows this claim is barred by the statute of limitations.

Daniel opposed both summary-judgment motions. With regard to Morris's motion, Daniel submitted evidence that he argued supported each of the breaches of confidentiality identified in his live pleading. He also identified two more breaches:

- on June 18, 2019, Morris's husband contacted a lawyer in the Wisconsin family-law suit and disclosed the terms of the settlement agreement; and

- on August 20, 2019, Morris sent a letter that disclosed the terms of the settlement agreement to the school her and Daniel's child attends.

As to Placzek's motion, Daniel argued that the mediator's signature approving and agreeing to the settlement agreement made him a party to the agreement. Daniel did not address Placzek's arguments regarding lack of consideration and limitations.

The trial court granted both summary-judgment motions, and the trial court entered a judgment that Daniel take nothing on his claims. Daniel now appeals.

## DISCUSSION

### Standard of Review

We review summary judgments de novo. *Dillard v. SNC-Lavalin Eng'rs & Constructors*, 629 S.W.3d 692, 696 (Tex. App.—Houston [1st Dist.] 2021, no pet.).

After adequate time for discovery, a party may move for summary judgment on the basis that there is no evidence to support one or more essential elements of the nonmovant's claim. TEX. R. CIV. P. 166a(i); *Dillard*, 629 S.W.3d at 696. The trial court must grant no-evidence summary judgment unless the nonmovant

responds by producing competent evidence raising a genuine issue of material fact as to each challenged element. TEX. R. CIV. P. 166a(i); *Dillard*, 629 S.W.3d at 696.

The no-evidence summary-judgment standard of review mirrors legal-sufficiency review. *Dillard*, 629 S.W.3d at 696. Thus, we will affirm a no-evidence summary judgment when there is a complete absence of evidence of a vital fact, the court is barred by rules of law or evidence from giving weight to the sole evidence offered to prove a vital fact, the evidence offered to prove a vital fact is no more than a mere scintilla, or the evidence conclusively shows the opposite of a vital fact. *Id.* We consider the evidence in the light most favorable to the nonmovant. *Id.*

To obtain traditional summary judgment, a party must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). Thus, when a defendant moves for summary judgment, it must either conclusively disprove at least one essential element of a challenged claim or conclusively prove the elements of an affirmative defense. *Blair v. Fritsch*, 608 S.W.3d 407, 412–13 (Tex. App.—Houston [1st Dist.] 2020, pet. stricken).

If a defendant establishes its entitlement to traditional summary judgment, the burden shifts to the nonmovant to raise a genuine issue of material fact. *Id.* at 413. A genuine issue of material fact exists when the summary-judgment evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* Once again, we review the summary-judgment evidence in the light most favorable to the

nonmovant, crediting evidence that favors the nonmovant if reasonable jurors could, disregarding contrary evidence unless reasonable jurors could not, and indulging all reasonable inferences and resolving any doubts in the nonmovant's favor. *Id.*

We cannot affirm a summary judgment on a ground that the movant did not raise in its summary-judgment motion in the trial court. *Garrett Operators v. City of Houston*, 461 S.W.3d 585, 591 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *see also Mott v. Red's Safe & Lock Servs.*, 249 S.W.3d 90, 98 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (stating that no-evidence motion that fails to specifically identify challenged elements is defective and cannot support summary judgment).

## I. Summary Judgment in Morris's Favor

Daniel's claims against Morris are all premised on her breach of the settlement agreement's confidentiality provisions. Morris successfully moved for summary judgment on the ground that there either was no evidence of breach or that the evidence conclusively disproves breach. We address each alleged breach in turn.

### A. June Contacts with Wisconsin Lawyer

In support of his allegation that Morris's husband disclosed the terms of the settlement agreement or other confidential information to a Wisconsin lawyer named Michael R. Phegley, Daniel relies on Phegley's affidavit. In this affidavit, Phegley states he was contacted by Morris's husband (then only Morris's boyfriend) on June 6 and June 11, 2019, and given various information relating to the Texas custody

dispute between Daniel and Morris. Phegley also states in his affidavit that Morris's husband contacted him a third time, on June 18, 2019, and requested that Phegley refrain from seeking a specific type of relief in the Wisconsin litigation—drug testing—because the parties in the Texas custody dispute "were close to reaching an agreement" that could be jeopardized by the relief in question. Finally, Phegley states that he received correspondence from Morris's lawyer on June 19, 2019, informing Phegley that the Texas custody suit had been resolved, and that the parties' agreement included "a confidentiality clause prohibiting all parties from communicating the terms of the agreement to anyone" outside of the custody suit.

Contrary to Daniel's argument, Phegley's affidavit does not support the allegation that Morris's husband breached the settlement agreement by divulging it or other confidential information. Morris's husband's June 6 and June 11 contacts with Phegley occurred before the parties to the Texas defamation and custody suits signed the settlement agreement on June 18, 2019. Morris obviously could not have breached the settlement agreement by contacting Phegley on these two occasions because the settlement agreement and its confidentiality provisions did not yet exist. *See AKIB Constr. v. Shipwash*, 582 S.W.3d 791, 806 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (indicating that party commits breach of contract when it fails or refuses to do something party has contractually committed to do). The same is true of Morris's husband's third contact on June 18, as Morris's husband advised

Phegley that the Texas parties were close to reaching an agreement and requested that Phegley refrain from acting in a way that would undermine the possibility of settlement. The only contact regarding the Texas suits that Phegley had afterward came from Morris's lawyer, not Morris's husband, and her lawyer informed Phegley that the parties had signed an agreement requiring confidentiality.

In sum, Phegley's affidavit supplies no evidence in support of this alleged breach, and breach is an essential element of Daniel's contract claim. *See id.* (stating that essential elements of contract claim include breach by defendant). As Phegley's affidavit is the sole evidence on which Daniel relies for this breach, Morris is correct that no evidence supports this particular allegation of breach, and the trial court therefore did not err in granting summary judgment as to this allegation. *See* TEX. R. CIV. P. 166a(i) (requiring court to grant no-evidence summary judgment unless nonmovant produces evidence that raises genuine issue of material fact).

### B.     June 18 Filing of Settlement Agreement

In support of his allegation that Morris disclosed the terms of the settlement agreement by filing an unsealed and unredacted copy in the custody suit, Daniel relies on another filing—specifically, an August 9, 2019 motion requesting the entry of an agreed order—in which Morris represented that she had previously "filed the mediated settlement agreement on June 18, 2019." Daniel argues that this representation is a binding judicial admission that Morris cannot now contradict.

9

In general, a party makes a judicial admission when she makes a statement of fact, other than an assertion of fact pleaded in the alternative, that conclusively disproves a claim or defense that she asserts. *H2O Sols. v. PM Realty Grp.*, 438 S.W.3d 606, 617 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). However, a statement made by mistake or based on a mistaken belief of the facts does not qualify as a judicial admission. *Thomas v. St. Joseph Hosp.*, 618 S.W.2d 791, 794 (Tex. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.); *City of Webster v. Hunnicutt*, 650 S.W.3d 792, 801 (Tex. App.—Houston [14th Dist.] 2022, pet. denied).

Here, Morris submitted summary-judgment evidence that her lawyer's representation in the August 9 motion was mistaken. The lawyer in question, Bernadette A. Barbee, filed a declaration, in which she explained that the mediator, Placzek, was the person who actually filed the settlement agreement with the court. Barbee further explained that she did not actually file the agreement, as Placzek had already done so, and her contrary statement in the motion was thus erroneous.

Daniel did not adduce any evidence contradicting Barbee's declaration. On the contrary, he filed summary-judgment evidence that corroborates her declaration. Specifically, Daniel included a copy of the electronic service notification for the June 18, 2019 filing of the settlement agreement with the trial court. That notice identifies Placzek as the filer. Based on this notice, in his opposition to Morris's summary-judgment motion, Daniel states: "Despite the confidential nature of the

10

settlement and its terms, the unsealed and unredacted Memorandum of Settlement with Binding Irrevocable Settlement Agreement was filed directly into the record. The filing identifies it was performed by Placzek at 7:46 p.m. on June 18, 2019."

Daniel further argues that the contradictory nature of the representations made by Morris's lawyer presents a genuine issue of material fact. That is, Daniel maintains that a factfinder must decide whether Morris actually filed the settlement agreement, as represented in the motion requesting the entry of an agreed order, or did not do so, as represented in Barbee's subsequent declaration. If these two pieces of contradictory evidence were the lone summary-judgment evidence on this issue, we would agree. But the electronic service notification, which Daniel himself included in the summary-judgment record, conclusively resolves any doubt on this issue, given that the notification's authenticity and accuracy are not questioned by anyone. *See Prosper Florida, Inc. v. Spicy World of USA*, 649 S.W.3d 661, 671 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (reciting that evidence is conclusive when reasonable people could not differ in their conclusions, including when evidence definitively negates contrary proof in some fashion). In the face of this additional evidence, a factfinder could not reasonably find that Morris, rather than Placzek, was the one who actually filed the settlement agreement. *See id.*

In sum, Daniel conclusively proved the identity of the filer is not Morris. Hence, Morris is correct that the evidence defeats this particular allegation of breach,

11

which is an essential element of Daniel's contract claim. *See AKIB Constr.*, 582 S.W.3d at 806 (stating that essential elements of contract claim include breach by defendant). Therefore, the trial court did not error in granting summary judgment as to this particular allegation of breach. *See* Tex. R. Civ. P. 166a(c) (requiring rendition of traditional summary judgment when evidence shows there is no genuine issue of material fact and movant is entitled to judgment as matter of law).

### C. August 6 and August 9 Filings as to Proposed Order

In support of his allegation that Morris divulged confidential information in two proposed orders filed with the trial court in the custody suit, Daniel relies on filings made by Morris on August 6 and August 9, 2019. In these filings, both proposed orders modifying the parent–child relationship, Morris included the terms of the settlement agreement, which addressed custodial arrangements concerning Daniel's and Morris's son. The settlement agreement itself was not attached as an exhibit to or otherwise included as part of either of these filings (as the agreement had already been filed by Placzek). The proposed orders merely incorporated language from the settlement agreement. Daniel argues that doing so violated the confidentiality provisions of the settlement agreement, even though he agreed to the entry of an order incorporating language from the agreement shortly thereafter, and the trial court signed the agreed order incorporating this language on August 16.

We hold that, as a matter of law, Morris's incorporation of the settlement agreement's language or terms into the proposed orders is not a breach of the agreement's confidentiality provisions. Thus, the August 6 and August 9 filings do not raise a genuine issue of material fact precluding no-evidence summary judgment.

The settlement agreement states on its first page in bold font and all capital letters that the parties agree that either one is entitled to a judgment on the agreement. And the settlement agreement includes provisions about the conservatorship, residency, and possession of the parties' child, as well as provisions about the parties' child-support obligations, which necessarily must be incorporated into an order modifying the parent–child relationship in the custody suit that the agreement resolves. Thus, the right to seek entry of a judgment reflecting the settlement agreement is explicitly guaranteed in the agreement itself and would be implicit otherwise. While the agreement also contains confidentiality provisions, those provisions must be read in harmony with the agreement as a whole, not in isolation from its other provisions. *See, e.g.*, *Shawn Ibrahim, Inc. v. Houston-Galveston Area Loc. Dev. Corp.*, 582 S.W.3d 753, 768 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (reciting that court must consider entire contract, harmonizing and giving effect to all its provisions so none is rendered meaningless, and that no single provision should be given controlling effect without reference to remainder). To hold that the settlement agreement's confidentiality provisions prohibit the parties from seeking

entry of a judgment on its terms would amount to judicial deletion of the provision guaranteeing the right to a judgment on the agreement and effectively make the agreement unenforceable. *See, e.g.*, *Maxey v. Maxey*, 617 S.W.3d 207, 224 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing authority for proposition that court cannot rewrite parties' contract or add or subtract from contract's language).

Arguably, one could harmonize the right-to-judgment and confidentiality provisions of the settlement agreement by requiring the parties to file under seal any request for the entry of judgment. Daniel appears to make this argument in his live pleading, in which he complains that these filings were unsealed and unredacted.

We disagree. The settlement agreement addresses sealing in its confidentiality provisions, indicating that the parties would make "a motion to seal certain documents in the Court's file." But this provision does not identify the documents in question, let alone refer to motions seeking the entry of judgment on the agreement. This reference to "a motion to seal" is the agreement's lone mention of sealing the record. The settlement agreement does not require a party who seeks entry of a judgment on the agreement to do so under seal, and we cannot add to the agreement's terms. *See id.* (noting that court cannot add to contract's terms).

In sum, the August 6 and August 9 filings do not evidence a breach of the parties' agreement, and breach is an essential element of Daniel's claim. *See AKIB Constr.*, 582 S.W.3d at 806 (stating that essential elements of contract claim include

14

breach by defendant). Thus, this evidence does not preclude summary judgment. *See* TEX. R. CIV. P. 166a(i) (requiring court to grant no-evidence summary judgment unless nonmovant produces evidence that raises genuine issue of material fact).

**D.      August 20 Letter to Son's School**

In support of his allegation that Morris provided her and Daniel's son's school with a copy of the settlement agreement in violation of its confidentiality provisions, Daniel relies on an August 20, 2019 letter penned by another of Morris's lawyers. In this letter, Susan Myres wrote to the school in response to a request from the school "that information be provided regarding the meaning of the language contained in the Binding Irrevocable Settlement Agreement." Daniel maintains that the school's request for this information, and Myres's response to the school's request in which she references the settlement agreement by name, give rise to an inference that Morris provided the school with a copy of the settlement agreement.

Morris maintains that Myres's letter is mistaken. According to Morris, she gave the school of copy of the trial court's order modifying the parent–child relationship that incorporated the terms of the settlement agreement. In support of this proposition, she relies on a notarized December 3, 2019 letter from the school's director of admissions, in which the director of admissions states that Morris provided the school with a copy of the trial court's order to help the school "understand the court-mandated expectations regarding parental rights." In the trial

15

court, Morris also apparently relied on an affidavit made by Myres explaining that her reference to the settlement agreement in her August 20 letter was mistaken. But Myres's affidavit is not included in the clerk's record or any of its supplements.

We agree with Daniel that this evidence shows the existence of a genuine issue of material fact. The evidence is conflicting: the August 20 letter indicates that Morris gave the school a copy of the settlement agreement, while the December 3 letter supports Morris's contention that the August 20 letter was mistaken about this. And, unlike the factual dispute concerning whether Morris or Placzek filed the settlement agreement with the trial court, there is no evidence in the record that conclusively resolves which version of events is accurate. When, as here, conflicting evidence supports two different accounts on a material issue, one of which supports the nonmovant's position on summary judgment, and the conflict in the evidence is not conclusively resolved by other evidence, summary judgment is improper. *See Carter v. Allstate Ins. Co.*, 962 S.W.2d 268, 270 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (noting that conflicting evidence on issue creates genuine issue of material fact for factfinder to resolve and precludes traditional summary judgment); *Cuidado Casero Home Health of El Paso v. Ayuda Home Health Care Servs.*, 404 S.W.3d 737, 743 (Tex. App.—El Paso 2013, no pet.) (stating that conflicting or inconsistent evidence raises fact issue and defeats no-evidence summary judgment).

In sum, whether Morris provided the school with a copy of the settlement agreement in violation of its terms or provided the school with a copy of the trial court's order incorporating the settlement's terms, which is permissible because an order cannot be sealed under Rule 76a(1) of the Texas Rules of Civil Procedure,[1] is a question that must be resolved by a factfinder. This alleged breach is viable.

**E. Breaches Based on Third-Party Conduct**

In his live pleading and his summary-judgment responses, Daniel also seemingly treated certain third-party conduct as actionable breaches by Morris. For example, Daniel noted that Phegley, the Wisconsin lawyer, was able to obtain a copy of the settlement agreement via the trial court clerk after it was filed with the trial court by Placzek. Setting aside that Placzek, not Morris, is responsible for filing the settlement agreement with the trial court, Phegley's conduct is not an independent breach attributable to either Placzek or Morris, but a consequence of the filing of the settlement agreement in the record. Assuming arguendo that the filing of the agreement is a breach, it is the act of filing itself that would constitute the breach. Daniel cannot rely on each subsequent post-filing instance of third-party access as an additional breach of contract by whomever filed the settlement agreement.

---

[1] Quite apart from inability to seal a court order, the trial court's order modifying the parent–child relationship also contains a disclaimer of confidentiality, which provides that the parties' confidentiality agreement does not apply to the order and authorizes them to disclose the order "as may be required to effect or enforce the same."

* * *

The trial court correctly granted summary judgment regarding all the confidentiality breaches alleged by Daniel, excepting the one about disclosure of the settlement agreement to the school. As there is a genuine issue of material fact as to that breach, the trial court erred in granting summary judgment on Daniel's claim against Morris for breach of the settlement agreement's confidentiality provisions. Thus, we reverse the trial court's summary judgment in Morris's favor and remand this cause to the trial court for further proceedings consistent with our opinion.

## II.    Summary Judgment in Placzek's Favor

Daniel alleges two distinctly different types of claims against Placzek: contract claims premised on Placzek's alleged breach of the settlement agreement's confidentiality provisions, and a malpractice claim premised on his breach of the confidentiality inherent in the mediation process. In both cases, the sole breach of confidentiality alleged consists of Placzek's filing of the settlement agreement.

Placzek contends he is entitled to summary judgment on the contract claims because he is not a party to the settlement agreement and therefore cannot be sued for breaching its terms even if filing the settlement agreement otherwise would be a breach of the agreement's confidentiality provisions. He also contends that there is no evidence that he received any consideration as to the settlement agreement.

18

Regarding Daniel's malpractice claim, Placzek contends that Daniel did not assert this claim until after the two-year statute of limitations had already expired.

## A. Contract Claims

The question of whether Placzek is a party to the settlement agreement who can be held liable for breaching its confidentiality provisions is a question of contract interpretation. When a contract is unambiguous, its interpretation presents a question of law. *Zurich Am. Ins. Co. v. Coastal Cargo*, 596 S.W.3d 381, 385 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). We consider the contract's language as a whole, trying to give effect to all of its terms so none are made meaningless. *Id.* Furthermore, we interpret the contract from a utilitarian perspective, taking into account its subject matter and avoiding, if possible, interpretations that are unreasonable, inequitable, and oppressive. *Unocal Pipeline Co. v. BP Pipelines (Alaska)*, 512 S.W.3d 492, 500 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

Daniel relies on the signature pages of the settlement agreement. He notes that he, Morris, and Placzek each signed the agreement under a signature block that reads "approved and agreed" in bold font and capital letters. Under Morris's and Daniel's signature lines, their names are typewritten. Under Placzek's signature line, the title "mediator" appears, rather than his typewritten name. Daniel contrasts this signature page with the one for the lawyers who represented the parties in mediation. Their

signature block reads "approved as to form only" in bold font and capital letters. Based on these signature blocks, Daniel posits that Placzek is a party to contract.

But when interpreting a contract, we do not consider just the terms that favor one party's interpretation and disregard the rest. *Zurich Am. Ins. Co.*, 596 S.W.3d at 385. And based on a review of all the settlement agreement's terms, we are persuaded that the agreement as a whole refutes Daniel's position for eight reasons.

First, the settlement agreement resolves two lawsuits, a custody suit and a defamation suit, in which Daniel and Morris are both litigants. Placzek is not a party to either suit. Apart from his role as mediator, he has no connection to these suits.

Second, the settlement agreement indicates in bold font and capital letters that it is bilateral in nature, stating that "either party is entitled to a judgment on this agreement." Notably, the agreement does not confer any rights on Placzek, such that this language regarding the right to entry of a judgment is meaningless as to him.

Third, in significant part, the terms of the settlement agreement are devoted to issues of conservatorship, custody, possession, and child support concerning Daniel's and Morris's child. Placzek has no discernible interest in these matters.

Fourth, the settlement agreement requires the parties to dismiss the two aforementioned lawsuits, which Placzek could not do as a nonparty, and further requires Daniel to pay Morris $155,000. Placzek receives nothing in the agreement.

20

Fifth, the settlement agreement's confidentiality provisions neither mention Placzek by name nor refer to the mediator in general. This omission is especially telling. If Placzek was to be subject to suit for violation of these provisions, one would expect them to make some reference to him personally or his role as mediator.

Sixth, the settlement agreement addresses the possibility of future litigation between the parties, requiring them to first mediate any dispute. The agreement identifies five acceptable mediators, one of whom is Placzek. It seems unlikely that Placzek would be an acceptable mediator if he was also a party to the agreement.

Seventh, the settlement agreement contains a provision requiring arbitration of any drafting disputes concerning the contents of the final order implementing the terms of the settlement agreement. The agreement names Placzek as the sole arbitrator, a position he could not occupy if he was also a party to the agreement.

Eighth, the settlement agreement provides that violation of its terms "causes this agreement to become null and void," requiring all consideration paid by Daniel to be returned to him within 24 hours after he gives notice of the violation. This term only makes sense in a bilateral agreement between Daniel and Morris. If Placzek was also a party, then a violation of the agreement's confidentiality provisions by him would unwind the entire agreement, regardless of whether or not Morris, or anyone associated with her, was also responsible for the violation of the agreement.

The preceding eight aspects of the settlement agreement account for all its substantive provisions. None of them suggest Placzek is a party to the agreement. Given the substantive provisions of the agreement, which neither confer rights nor impose responsibilities on Placzek by name or by title in his role as mediator, we reject Daniel's position that Placzek's signature, standing alone, does what the remainder of the agreement does not—make Placzek a party to the agreement. When viewed as a whole, the settlement agreement shows Placzek is not a party to the agreement who can be sued for breach of contract if he violates its provisions. *See Prent v. rJET, L.L.C.*, No. 01-14-00408-CV, 2015 WL 1020207, at *3–4 (Tex. App.—Houston [1st Dist.] Mar. 15, 2015, no pet.) (mem. op.) (reviewing provisions of aircraft lease and concluding person who signed as president of one party did not herself become party to lease, notwithstanding provision in which she certified she was responsible for operational control of aircraft and had responsibility to comply with regulations); *see also Mission Grove, L.P. v. Hall*, 503 S.W.3d 546, 551–54 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (stating that contract between others cannot create obligation or duty as to non-party and holding that person who signed contract as president of one party did not thereby make himself party).

Daniel argues that, at the very least, Placzek's signature indicating both approval and agreement with the terms of the settlement agreement makes the

agreement ambiguous as to whether Placzek is a party. Therefore, Daniel maintains, a jury must decide whether Placzek is a party to the agreement. We do not agree.

Whether a contract is ambiguous is a question of law for the court. *Maxey*, 617 S.W.3d at 220. A contract is ambiguous only if its language permits two or more reasonable interpretations. *Id.* at 219. In deciding whether alternative interpretations are reasonable, we again consider the contract as a whole in light of the circumstances present when the contract was entered. *Charles R. Tips Family Tr. v. PB Com.*, 459 S.W.3d 147, 153 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

Placzek's signature, standing alone, is admittedly less clear than it could be as to his status as a signatory. But this simple lack of clarity does not make the agreement as a whole ambiguous as to whether he is a party. *See, e.g.*, *id.* (stating "simple lack of clarity or disagreement between parties does not render a term ambiguous"). As shown by his signature block, Placzek signed the agreement in his role as the mediator. Mediators are not customarily parties to the settlement agreements they broker. *See generally Mediator*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "mediator" as "neutral person who tries to help disputing parties reach an agreement"). And, as we have already discussed, none of the substantive provisions of the settlement agreement hint that Placzek is a party. On the contrary, the agreement's substantive provisions dispel the notion that Placzek is a party. Viewed as a whole, the agreement is not ambiguous as to his non-party status.

Finally, Daniel posits either that the settlement agreement and the agreement retaining Placzek as mediator are a single contract, such that Placzek may be sued for violations of the settlement agreement's confidentiality provisions, or that Placzek may be sued simply for breach of the agreement retaining him as mediator. But neither of these positions can withstand Placzek's summary-judgment motion.

Daniel does not cite authority for the general proposition that an agreement retaining a mediator and any subsequent settlement agreement entered in mediation must be read together as a single contract. If we held this was the case here, our holding might well make all mediators parties to the settlements they facilitate because Daniel does not rely on terms peculiar to the particular agreement retaining Placzek. We decline to fashion a new rule that either always makes mediators parties to the settlements resulting from mediation or creates a fact issue on this question. *See Unocal Pipeline Co.*, 512 S.W.3d at 500 (instructing that we are to interpret contracts from utilitarian perspective, accounting for their subject matter, and avoid, when possible, interpretations that are unreasonable, inequitable, and oppressive).

As to suit on the retention agreement itself, Daniel does not cite any confidentiality provisions contained in that agreement. The contractual provisions that Daniel alleges Placzek violated are all contained in the settlement agreement. While Daniel also alleges that Placzek had a non-contractual obligation to maintain

confidentiality, Daniel's contract claims rise and fall with the settlement agreement's confidentiality provisions alone, and Placzek simply is not a party to that agreement.

Because the unambiguous settlement agreement shows as a matter of law that Placzek is not a party to the agreement, Daniel cannot sue him for breach of the agreement's confidentiality provisions. *See Prent*, 2015 WL 1020207, at *3–4; *see also Mission Grove*, 503 S.W.3d at 551–54. Therefore, the trial court did not err in granting summary judgment in Placzek's favor on Daniel's contract claims.

## B.    Malpractice Claim

The sole issue relating to malpractice that is before us on appeal is whether Daniel asserted his malpractice claim before the two-year statute of limitations for this claim expired. *See Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988) (reasoning that legal malpractice is in nature of tort and therefore subject to two-year limitations period for torts established by section 16.003 of Texas Civil Practice and Remedies Code). As Placzek did not challenge the proposition below, we assume without deciding for purposes of this appeal that Texas law recognizes a cause of action for mediator malpractice based on a mediator's breach of the general duty to maintain confidentiality regarding mediation-related matters. *See In re Cartwright*, 104 S.W.3d 706, 714 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) (indicating that in general all matters concerning mediation are confidential and thus may not be disclosed even to court). *But see* SARAH R. COLE ET AL., 1 MEDIATION:

LAW, POLICY & PRACTICE § 11:13 (2022) ("Although it has been over twenty years since the first edition of this treatise was published and noted no reported cases of mediator liability, there continue to be few cases even recognizing a cause of action for mediator malpractice.").

Limitations is an affirmative defense. TEX. R. CIV. P. 94. Therefore, a movant may only seek summary judgment based on limitations in a motion for traditional summary judgment. *See Young Refin. Corp. v. Pennzoil Co.*, 46 S.W.3d 380, 385 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (noting that movants cannot obtain no-evidence summary judgment on affirmative defenses, like limitations, because they, not nonmovants, will bear burden of proof on these defenses at trial). To obtain summary judgment based on limitations, the movant must prove as a matter of law that the nonmovant's cause of action is time-barred, including the date on which the cause of action accrued. *E.g.*, *Gandy v. Williamson*, 634 S.W.3d 214, 233 (Tex. App.—Houston [1st Dist.] 2021, pet. denied). A cause of action accrues when either the allegedly wrongful act was committed and caused an injury or when the facts authorizing a party to seek a judicial remedy came into existence. *Id.*

Because Daniel's malpractice claim is based on Placzek's filing of the settlement agreement with the district clerk, Placzek maintains that Daniel's claim accrued on the date of filing—June 18, 2019. Because Daniel did not assert his

26

mediator malpractice claim until his live pleading, which was filed on November 12, 2021, Placzek contends the claim is barred by the two-year limitations period.

Daniel counters that he first asserted a malpractice claim in an earlier version of his pleading, which was filed on May 8, 2020, before limitations had expired.

Resolution of the parties' dispute turns on the application of the relation-back doctrine, which is codified in section 16.068 of the Texas Civil Practice and Remedies Code. That section provides that if a filed pleading relates to a cause of action that is not subject to limitations when the pleading is filed, a later amended or supplemental pleading that changes the facts or grounds of liability is not subject to limitations "unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence." TEX. CIV. PRAC. & REM. CODE § 16.068. In short, this provision is designed to allow a party to assert other grounds of liability after limitations has run, provided that these other grounds relate to the same transaction or occurrence the party has placed at issue in an earlier pleading filed within limitations. *Syrian Am. Oil Corp. v. Pecten Orient Co.*, 524 S.W.3d 350, 363 (Tex. App.—Houston [1st Dist.] 2017, no pet.). In deciding whether causes of action arise from the same transaction or occurrence, we focus on whether there is a logical relationship between them. *Attalla v. Loyc Invs. Ltd. Co.*, No. 01-21-00078-CV, 2022 WL 2976223, at *9 (Tex. App.—Houston [1st Dist.] July 28, 2022, pet. denied) (mem. op.). If the causes of action arise from a common core of operative facts, then

27

they arise from the same transaction or occurrence, even though the requirements for the proof of these causes of action differ somewhat. *Id.* It is immaterial that the later pleading asserts a different cause of action. *Long v. State Farm Fire & Cas. Co.*, 828 S.W.2d 125, 128 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

In his live pleading, Daniel states a cause of action for "malpractice" against Placzek. Citing a mediator's duty of confidentiality, Daniel alleges that Placzek's public disclosure of the settlement agreement constitutes malpractice. As damages, Daniel seeks to recover the consideration that he paid Placzek for confidentiality.

In his earlier May 2020 pleading, Daniel alleged a cause of action for "legal malpractice" against Placzek. Though Daniel complained of unspecified "drafting errors and omissions" on Placzek's part, he also alleged that Placzek had negligently disclosed the settlement agreement by filing it in the public records of the court.

Though it appears that Placzek stated a different cause of action in his earlier pleading than the later one—legal malpractice versus mediator malpractice—both causes of action arise from the same transaction or occurrence. In both instances, Daniel's claim arises from the same particular circumstance: Placzek's public disclosure of the settlement agreement. Accordingly, Daniel's malpractice claim in his live pleading relates back to his earlier pleading and is not barred by limitations. *See Attalla*, 2022 WL 2976223, at *9 (explaining that when causes of action are based on common core of operative facts, then relation-back doctrine applies).

Because the relation-back doctrine applies to the mediator malpractice claim Daniel alleges in his live pleading, his malpractice claim is not barred by limitations. Thus, the trial court erred in granting summary judgment on the malpractice claim.

## III.    Other Appellate Complaints

On appeal, Daniel makes two additional complaints. First, he contends the trial court erred in denying his motions to compel discovery responses from Placzek. Second, Daniel contends the trial court erred in denying his motion for continuance to allow further discovery with respect to Placzek's summary-judgment motion. Neither of these additional complaints are directed at the trial court's summary judgment in favor of Morris; they solely concern Daniel's claims against Placzek.

### A.    Discovery

In his brief, Daniel does not identify particular discovery requests he made and then explain why the trial court's denial of discovery on these particular requests was erroneous. Instead, Daniel generally refers us to his requests for disclosure and production, cites to parts of the record below, mentions a couple of general topics of discovery in passing (the professional organizations to which Placzek belongs and their rules) and leaves it as an exercise for this court to examine the cited portions of the record for itself and ascertain whether and why Placzek's "refusal to fully answer," as Daniel phrases it, was proper or improper without the aid of argument.

Daniel's briefing on discovery-related issues does not preserve anything for review because he has not presented particular complaints supported by specific arguments. *See* TEX. R. APP. P. 38.1(i) (requiring brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities"); *Banakar v. Krause*, 674 S.W.3d 564, 578 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (stating brief should acquaint court with issues and present argument that will enable court to decide them, not conclusorily assert positions without support).

Moreover, to the extent Daniel contends he was denied relevant discovery on his contract-related claims against Placzek, we have held that Placzek is not a party to the settlement agreement as a matter of law. Our holding rests on an examination of the agreement's unambiguous text alone. Because the settlement agreement is unambiguous in this respect, neither the trial court nor we can look to extrinsic evidence to add to or alter its terms. *See, e.g.*, *Maxey*, 617 S.W.3d at 225 (concluding that settlement agreement was unambiguous so that trial court should have decided parties' intent as matter of law and erred in allowing jury to decide parties' intent based on parol evidence about their intentions). Thus, the trial court did not err by disallowing discovery from Placzek relating to Daniel's contract-related claims.

As for discovery relating to Daniel's mediator malpractice claim, Placzek solely sought summary judgment based on the affirmative defense of limitations. Daniel does not contend that any of his requests related to the subject of limitations,

30

and, in any event, we have reversed the trial court's limitations-based judgment. Thus, any ostensible error arising from the trial court's denial of discovery relating to mediator malpractice could not constitute a basis for reversal. *See* TEX. R. APP. P. 44.1(a) (providing that judgment cannot be reversed based on error of law unless error probably caused rendition of improper judgment or prevented proper presentation of case on appeal). Having reversed this aspect of the trial court's summary judgment, it is the trial court's role to reevaluate any discovery issues relating to Daniel's mediator malpractice claim, if necessary, in light of our opinion.

## B. Continuance

Daniel's complaints about the trial court's denial of his motion for continuance are premised on the position that he should have been allowed additional discovery on his claims against Placzek. Like his discovery complaints, Daniel's briefing regarding his requested continuance is general and conclusory. Accordingly, he once again has not preserved this issue for our review. *See* TEX. R. APP. P. 38.1(i); *Banakar*, 674 S.W.3d at 578. In addition, because the dispositive summary-judgment issues were legal questions turning on undisputed facts—Placzek's non-party status as to the settlement agreement and the operation of the two-year statute of limitations on the mediator malpractice claim—Daniel cannot show the trial court erred in denying his request for a continuance in any event. *See, e.g.*, *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 29–30 (Tex. App.—

31

Houston [1st Dist.] 2004, pet. denied) (holding trial court did not err in refusing further discovery before ruling on summary-judgment motion because there was no need for it given nature of dipositive issues and citing authority for proposition that court does not err in denying continuance sought to conduct immaterial discovery).

## CONCLUSION

We affirm the trial court's judgment in part, reverse the trial court's judgment in part, and remand this cause for further proceedings consistent with our opinion.


Gordon Goodman
Justice

Panel consists of Justices Goodman, Countiss, and Farris.